S10Y0213. IN THE MATTER OF MARCUS STAN BALLEW.
(695 SE2d 573)

PER CURIAM.
This matter is before the Court on the Report and Recommendation of the Review Panel, which adopted some of the Special Master's findings of fact and conclusions of law, and rejected others. The State Bar filed a Formal Complaint against Respondent Marcus Stan Ballew charging him with violating Rules 1.2 (a), 1.3, 1.4, 1.8 (e), 1.15 (I), 1.15 (II), 3.2, 8.4 (a) (4), and 9.2 of the Georgia Rules of Professional Conduct, see Bar Rule 4-102 (d). The Special Master, Laverne Lewis Gaskins, held an evidentiary hearing after which she

issued her report finding that Ballew violated all the rules with which he was charged and recommending disbarment. The Review Panel found that Ballew violated only Rules 1.8 (e), 1.15 (I), 1.15 (II) and 8.4 (a), and recommended that he receive a one-year suspension with the condition for reinstatement that he successfully participate in the State Bar's Law Office Management Program. Both parties filed exceptions to the Review Panel's report and both filed responses to each other's exceptions.

The Special Master found as fact that a client retained Ballew to represent her and her children in connection with a 2001 automobile accident. Although the client instructed Ballew to tell her of any settlement offers and keep her informed about the case, she testified that he did not tell her about the $14,000 settlement, about which she was unaware until 2007; the client also does not recall Ballew telling her about settlement offers for her children before 2006 or 2007. Ballew settled his client's claim for $14,000 and received a check in August 2003, but he did not provide the client with an accounting reflecting distribution of that money. Ballew settled the children's claims for $17,500 and endorsed the settlement checks by signing the client's name; the client does not recall approving the settlement. Pearson, Ballew's former employee, testified that she recalled discussing settlement offers with the client but stated she was not present when Ballew and the client may have discussed the $14,000 settlement by telephone. Pearson testified that the client knew about and approved the children's settlement offers. The Special Master found that Pearson lacked credibility because she testified that she would not have notarized the settlement documents without the client's approval, but she also testified that she falsely notarized documents regarding the client's case indicating that the client appeared before her and signed settlement documents when the client had not done so. Ballew testified that he informed his client of the settlement offers and that she approved them but he could not recall when he had done either, and he said the client never came to his office to sign the documents. Ballew filed a complaint in superior court after settling his client's case in which he listed her as the plaintiff. Although he told the client he would determine if he could get more money for her children's claims, Ballew did not act diligently or promptly do so, other than reviewing medical bills and records. The client thought Ballew would direct payment to her medical providers but she contends there are medical bills still outstanding. Ballew claims there are no outstanding medical bills as they have been paid through public assistance. The client allowed Ballew to represent her in seeking Social Security benefits; he filed some documents and attended a hearing in 2003, and in 2007 continued to research that claim. Ballew left his client uninformed

about the status of her case; she did not know that Ballew had dismissed the suit or that her claim or her children's claims were settled. She did not know that Ballew had received money on her behalf, did not know how much money she would receive, or when she could expect to receive it. The client requested her file in December 2006 but did not receive it until June 2007. Ballew made payments to his client over the years, which he contends came from his personal funds that he asserts were his fees from the settlement money. The client thought the funds were advancements; she did not know they were part of her settlement funds. Ballew gave her the money prior to receiving any settlement funds. By June 2004 Ballew had given his client $18,050 but he had received only $14,000. In July 2004 Ballew received $9,000 on two of the children's claims; by then he had received $23,000 in settlement funds. Assuming a 35% contingency fee, Ballew should have given his client $14,950. Ballew received $8,500 on the third child's claim in August 2004 for a total of $31,500, none of which he put into his attorney trust account (although he sent the client checks from his trust account). Ballew continued to send his client money but did not inform her about the receipt of the funds and did not provide her with an accounting; instead, he gave her funds in increments in response to her requests. Ballew later realized he was giving the client money that should have been his fees. In February 2007 Ballew offered to give the client $500 a month for 15 months to "buy the peace" between them. In April 2007 he offered to buy her a car for the same reason. Ballew signed his client's name to settlement documents and directed his employees to falsely notarize some of them; he stated that he believes the notary seal on the settlement documents is "surplusage." The Special Master found clear and convincing evidence that Ballew violated the rules with which he was charged. The maximum penalty for violation of all those rules is disbarment, except for 1.4, 1.8 (e) and 3.2, the punishment for violation of which is a public reprimand. This Court has disbarred attorneys for violating Rules 1.15 (I), 1.15 (II) and 8.4 (a) (4), see *In the Matter of McKenna*, 282 Ga. 469 (651 SE2d 80) (2007); *In the Matter of Ballard*, 280 Ga. 504 (629 SE2d 809) (2006), and for settling claims without client authority and forging clients' names on settlement documents, see *In the Matter of King*, 278 Ga. 384 (602 SE2d 636) (2004); *In the Matter of Ross*, 278 Ga. 213 (599 SE2d 185) (2004). The Special Master found mitigating circumstances that Ballew has no disciplinary history and cooperated with the disciplinary process, but she found them insufficient to override the egregiousness of Ballew's conduct. Accordingly, the Special Master recommended disbarment.

The Review Panel issued its report in which it found that Pearson's testimony was credible as she no longer was employed by

Ballew at the time she testified so had no interest in the outcome of the case and she had personal knowledge of the client's case. The Review Panel found Pearson's testimony credible as to the number of visits and telephone calls the client made to the office, her general knowledge of the case and the numerous conversations she had with the client about the status of the case and the settlement. The Review Panel found the evidence in conflict regarding whether the client consented to the settlement and that it thus did not support a finding by the clear and convincing standard that she did not know about or approve the settlement. The client said she never approved the settlement, but she recalled discussions with Ballew regarding settlement and specifically recalled an amount that could have been $14,000; she stated she received $27,500-$28,000 from Ballew; she recalled visiting Ballew's office and talking with him and his staff; and she stated she received and rejected settlement checks on her children's behalf. Ballew testified that the client did consent to the settlement, and Pearson testified about a specific conversation she had with the client about the $14,000 settlement in which the client said she intended to accept that offer, and at that time Pearson put Ballew (who was out of the office) on the phone with the client to discuss the settlement. The Review Panel thus concluded that Ballew violated only Rules 1.8 (e), 1.15 (I), 1.15 (II) and 8.4 (a) (4). It did not accept the Special Master's findings regarding the other alleged violations and noted that there was no evidence to support the conclusion that Ballew "entered into an agreement" to prohibit his client from filing a disciplinary complaint. Therefore, it recommended as punishment a one-year suspension with the condition that Ballew successfully complete the Law Office Management Program.

The State Bar filed an exception to the Review Panel report in which it noted that this Court is not bound by the Review Panel's findings of fact or conclusions of law. The State Bar argued that the Special Master observed Pearson's demeanor and was in the best position to determine her credibility, and that her previous false swearing by falsifying the notary confirmed her lack of credibility. The State Bar contends Pearson testified only about her opinions, not firsthand knowledge (in that she only put the client on the phone with Ballew but does not know if they discussed the settlement or not, and thought the client was aware of and authorized the settlements, but she did not tell the client herself) and argues that Pearson voluntarily chose to testify for Ballew so obviously had an interest in the outcome. The State Bar claims the record shows the client clearly did not authorize the settlements. It argues that the Review Panel found (by adopting those portions of the Special Master's findings) that Ballew filed the complaint in Superior Court

without consulting his client, without providing her with the pleadings and despite having settled some of the claims, and dismissed the suit without telling her, which conduct violated Rules 1.2 (a), 1.3, 1.4 and 3.2. The Review Panel also found (by not rejecting the Special Master's findings) that Ballew did not diligently seek a greater recovery in the children's cases, which violated Rules 1.2 (a), 1.3 and 3.2; did not account for or make the payments to medical providers but simply kept the money, which violated Rules 1.2 (a), 1.3, 1.4 and 1.15 (I); did not pursue Social Security benefits and falsely told the client he was continuing to research that issue, which violated Rules 1.2 (a), 1.3 and 1.4; did not advise his client of the status of her case, which violated Rule 1.4; and offered money and gifts to the client to "buy the peace," which violated Rule 9.2. The State Bar contends the Review Panel thus failed to make the appropriate legal conclusions despite its factual findings of the underlying misconduct. It urges the Court to disbar Ballew based on his conduct in this matter as it regularly does when a lawyer fails to remit funds to a client and forges signatures, see *In the Matter of Turner*, 282 Ga. 475 (651 SE2d 81) (2007), *In the Matter of Burton*, 274 Ga. 319 (553 SE2d 579) (2001); when attorneys abandon legal matters entrusted to them, see *In the Matter of Peebles*, 280 Ga. 229 (626 SE2d 488) (2006), *In the Matter of Ellison*, 282 Ga. 647 (651 SE2d 746) (2007); and when attorneys convert fiduciary funds to their own use, see *In the Matter of Butler*, 283 Ga. 250 (657 SE2d 245) (2008), *In the Matter of Williams*, 281 Ga. 558 (640 SE2d 292) (2007). The State Bar posited the aggravating factors of a dishonest or selfish motive, multiple offenses, refusal to acknowledge the wrongful nature of the conduct (by referring to the notary seal as "surplusage"), vulnerability of the victim and substantial experience in the practice of law.

In his exception Ballew admits he violated Rule 1.8 (e) by providing his client financial assistance outside of the litigation in order to help her through financial hardship. He contends the violations of Rules 1.15 (I) and 1.15 (II) were inevitable based on his actions in violating Rule 1.8 (e) as he gave his client money before he received her settlement money, so he could not use his trust account. He states that the Review Panel report does not support a violation of Rule 8.4 (a) (4) because it held that he did not violate Rule 1.4 (failing to keep client informed) and held that he did not settle the case without the client's approval or forge documents in order to settle the case. Ballew asks that for his admitted violation of Rule 1.8 (e) and the "inevitable" violations of Rules 1.15 (I) and 1.15 (II) he receive a public reprimand. In response to the State Bar's exceptions, Ballew argues that his client received a beneficial settlement; she never claimed he cheated her out of any money; and she received more than she was entitled to under the contingency fee agreement.

He takes issue with the State Bar's contention that because she falsified the notary Pearson's testimony regarding the settlement was not credible, because the notarization of a document does not destroy credibility.

In response to Ballew's exception, the State Bar rejects Ballew's assertion that his decision to give the client money for "humanitarian needs" obviated his obligation to comply with the Bar Rules regarding his trust fund and accounting requirements. It also rejects his argument that his trust fund violations were inevitably caused by his largesse to this client because Ballew "unilaterally chose to appropriate his client's money," Response of State Bar, 6. The State Bar notes that there is no way to determine if the client received the correct amount, or more, because of Ballew's failure to keep adequate records. It also points out that Ballew incorrectly states that the Review Panel found he had not falsified and forged documents; the Review Panel did not reject that finding by the Special Master, and Ballew stipulated that he signed his client's name to settlement documents and had the documents notarized. The State Bar asserts that the record does not support a punishment of a public reprimand.

We have reviewed the record in this case and conclude that the Special Master was in the best position to observe the parties' demeanor and credibility. We find the State Bar's arguments and citation to authority persuasive. Accordingly, after careful consideration of all the evidence submitted, the reports of the Special Master and the Review Panel, and the arguments advanced by all parties, we hereby order that Marcus Stan Ballew be disbarred and that his name be stricken from the rolls of attorneys authorized to practice law in the State of Georgia. He is reminded of his duties under Bar Rule 4-219 (c).

*Disbarred. All the Justices concur, except Benham, Melton and Nahmias, JJ., who dissent.*

BENHAM, Justice, dissenting.

I respectfully dissent from the denial of Mr. Ballew's Motion for Reconsideration regarding his disbarment from the practice of law on April 19, 2010. I would grant the motion and, rather than disbarment, I would suspend Mr. Ballew from the practice of law for a term of two years.

I am authorized to state that Justice Melton and Justice Nahmias join in this dissent.

DECIDED APRIL 19, 2010 —
RECONSIDERATION DENIED JUNE 28, 2010.

*Paula J. Frederick, General Counsel State Bar, Rebecca A. Hall,*

*Assistant General Counsel State Bar*, for State Bar of Georgia.
*Byron D. Watson, J. Converse Bright*, for Ballew.