S13Y0322. IN THE MATTER OF MURBLE ANITA WRIGHT.
(751 SE2d 817)

PER CURIAM.

This disciplinary matter is before the Court on the Report and Recommendation of the Review Panel which accepted the 60-page report and recommendation of the special master, Mark W. Forsling, and recommended a one-year suspension with conditions on reinstatement as discipline for the violations by Respondent Murble Anita Wright (State Bar No. 778525) of Rules 1.4, 1.5 (c) (2), 1.15 (I) (b) and (c), and 1.15 (II) (b), see Bar Rule 4-102 (d). Wright has filed exceptions to the Report and Recommendation, and, for the reasons that follow, we agree with the Review Panel and recommend a one-year suspension with conditions on reinstatement as discipline for Wright's Rule violations.

The special master, who was in the best position to observe the parties' demeanor and determine the witnesses' credibility, see *In the Matter of Ballew*, 287 Ga. 371, 376 (695 SE2d 573) (2010), found that this matter arose out of Wright's representation of a married couple and their daughter regarding the damages they sustained in an automobile collision in May 2007 and out of Wright's representation of the couple and their corporation in a landlord/tenant dispute beginning in the Fall of 2007.

With regard to the May 2007 automobile collision representation, Wright, who has been a member of the bar since 1993, entered into separate contingency fee contracts with all three members of the family. Those contracts provided, in relevant part, that Wright would receive 35% of any settlement proceeds (plus expenses) and they gave Wright a limited power of attorney and authorized her to execute any and all documents or items in connection with these claims, including releases and settlement checks. With apparent authority, Wright settled the family's personal injury claims in late 2008. She signed their names on the releases and on the checks, which she then

deposited into her escrow account. Wright did not tell her clients that the checks had been issued or that she had deposited them into her escrow account. Although Wright apparently prepared very general settlement statements for each client detailing the receipt and use of the settlement proceeds, she never sent or otherwise provided those statements to her clients.

In the Fall of 2007, the couple signed a Memorandum of Engagement hiring Wright to represent them for an hourly fee in connection with their company's alleged failure to pay the rent as due under a lease agreement and their liability under their personal guaranties of the company's obligations under that agreement. That Memorandum provided that they would receive periodic itemized statements for fees and costs which should be remitted within ten days and that they "MAY ALSO SIGN AN ATTORNEY LIEN AGAINST ANY PROCEED [sic] THAT [THEY] REALIZE IN [THEIR] PERSONAL INJURY CLAIMS AS PAYMENT FOR LEGAL EXPENSES AND FEES FOR THIS ACTION." (Capitalization in original.) Although the couple understood the language to mean that Wright could use the settlement funds from the personal injury matter to pay legal costs in the landlord/tenant matter if they failed to pay those costs, they never signed any documents constituting an attorney lien. The landlord eventually sued the couple and their business and sought summary judgment. Although Wright defended the suit and filed a response to the motion for summary judgment, the court granted the landlord's motion. In early December 2008, Wright sent the couple a letter offering to represent them in an appeal of the judgment if they paid additional legal fees, but advising them that she could not continue to work on the contingency arrangement that would allow them to pay her legal fees once they received their settlements from the personal injury suit, because her fees now far exceeded $10,000. This was the first indication that the couple had as to the fees they owed in the landlord/tenant case since Wright had never provided them with periodic itemized statements.

In mid-December 2008, Wright prepared an itemized statement showing a balance of $14,725.75 due in the landlord/tenant case, but it is unclear when that statement was mailed to the couple. The evidence presented at the hearing included a letter dated December 22, 2008 which was addressed to the couple and their daughter. That letter indicates that it is a follow up to "a telephone conversation that we had" informing the family that the settlement offers in the personal injury case had been accepted with their permission, but that Wright would retain all proceeds realized to defray her fees in the landlord/tenant litigation. It is unclear if and when the family received this December 22 letter, but Wright admits that she only

spoke to the husband and that she did not get a separate agreement from the wife allowing her to retain the proceeds of her personal injury settlement. Although Wright testified that the daughter called her to provide authority to retain the proceeds, the daughter unequivocally testified that she never did so, and the special master specifically credited the daughter's testimony over Wright's in this regard and specifically found that Wright *fabricated* her testimony about the telephone call with the daughter. The record contains another letter dated January 9, 2009 which is also addressed to the entire family. That letter again indicated that the husband agreed that the settlement funds could be applied toward Wright's fees in the landlord/tenant suit, but the husband denied seeing this letter until April 2009 and the wife and daughter did not recall seeing it prior to these disciplinary proceedings. Shortly after the January 9 letter, Wright transferred the entirety of the family's settlement funds out of her escrow account and, based on her contention that the family authorized her actions, she retained those funds.

In February 2009, Wright sent the husband and wife a bill for her services in the landlord/tenant action, but it contained no indication that the entirety of the settlement proceeds had been applied. The husband responded to the letter by calling Wright to inquire about the status of the settlement proceeds and in that call, the husband claims to have vigorously denied Wright's contention that the family authorized her to retain the proceeds. In March 2009, the family sent Wright a certified letter demanding a copy of their files and requesting a billing statement for all services. Wright admits that she ignored their request and that she did not provide the family with copies of their files until the State Bar contacted her in connection with this disciplinary matter and told her to do so. Instead, Wright filed three lawsuits in the Magistrate Court of Fayette County, Georgia: one against each family member seeking to recover the contingency fee from the personal injury cases, plus fees and expenses. The family members filed counterclaims seeking the full amounts of their settlement funds. The magistrate allowed Wright to retain essentially 35% of the settlement proceeds that the daughter was seeking. The magistrate found in Wright's favor on the couple's counterclaims, finding that the couple had waived any right to the settlement proceeds to which they thought they were entitled, but it found in the daughter's favor on her counterclaim and awarded her essentially 65% of the settlement proceeds that were attributable to her claim in the personal injury lawsuit. The couple did not appeal, but Wright appealed the judgment in the daughter's case. Wright later initiated a separate action in magistrate court seeking to recover fees she contended were due on the landlord/tenant case, but

the magistrate court found that action barred by res judicata and Wright's subsequent appeal was withdrawn.

Based on those facts, the special master found that the State Bar had proven by clear and convincing evidence that Wright violated Rule 1.4 by failing to provide the family with a copy of their file in March 2009 when they requested it by certified letter; violated Rule 1.5 (c) (2) by failing to promptly send settlement statements to the family upon conclusion of the personal injury matter; and violated Rule 1.15 (I) (b) by retaining the entirety of the settlement funds belonging to the wife and daughter. He rejected Wright's contention that she was entitled to retain the funds, noting (1) that the Memorandum of Engagement that she signed with the couple with regard to the landlord/tenant matter provided retention of the settlement funds, via a lien, as a possibility if the couple failed to pay Wright's fees as due, but Wright's failure to send the couple the periodic statements required by the Memorandum of Engagement, prevented them from paying as due; (2) Wright never pursued a lien or had the couple sign any lien documents and the Memorandum of Engagement did not otherwise provide authorization to retain the funds; and (3) even if Wright obtained a verbal agreement from the husband to retain all of his settlement funds, she never obtained permission from the wife or daughter to retain more than 35% of their settlements. The special master also found that Wright violated Rule 1.15 (I) (c) by moving all of the settlement funds of the wife and daughter out of her trust account when she knew or should have known that those women disputed her claim to the entirety of the funds or, at least, had not agreed to her proposal to retain the funds. Finally, the special master found that, for the same reasons that support the finding of violations of Rules 1.15 (I) (b) and (I) (c), Wright also violated Rule 1.15 (II) (b). The maximum sanction for a violation of Rule 1.15 (I) or 1.15 (II) (b) is disbarment, and the remainder of the violations can be punished by a public reprimand.

The special master held a separate hearing to hear evidence as to mitigation and aggravation of punishment. Wright presented evidence from various individuals who testified as to her trustworthy nature, her volunteer activities, and her reputation as an honest, responsible, and thorough person and attorney. Wright herself testified as to her education, her experience, which included her service as a juvenile court judge in Clayton County, and her various volunteer activities, which included acting as a mentor to young people, generally, as well as to new attorneys. Wright testified that she believed she had permission to retain the settlement funds and that she fulfilled the spirit and letter of her agreement with her clients. She argued that she was, at worst, merely negligent in her dealings with

her clients, but the special master disagreed and found that Wright knew or should have known, at least as to the wife and daughter, that she did not have sufficient authorization to retain their settlement proceeds. Thus, he decided that under ABA Standard 4.12, suspension was generally appropriate as discipline. In mitigation, he found that Wright had no prior disciplinary history, that she was cooperative throughout the disciplinary proceedings, and that she is a person of good character and reputation who has served the community in many civic and religious activities. Although the special master stated that he believed that Wright believed that she had a right to the settlement proceeds, he thought that she acted in poor judgment in reaching that conclusion and he found unpersuasive her argument that she lacked a selfish motive. Thus, he concluded that her failure to acknowledge any wrongdoing offset the other factors in mitigation of discipline. Because Wright committed a serious error of judgment in retaining the settlement funds, and because, as a result, the wife and daughter were harmed financially and lost confidence in the legal profession, the special master recommended that Wright be suspended for a period of one year for her violations of Rules 1.15 (I) (b), 1.15 (I) (c), and 1.15 (II) (b), and that she be publicly reprimanded for her violation of Rules 1.4 and 1.5 (c) (2). See, e.g., *In the Matter of Fitch*, 289 Ga. 253 (710 SE2d 563) (2011). He further recommended that Wright's reinstatement be conditioned upon her (1) paying $3,243.50 to the wife and $5,713.50 to the daughter, which amounts to approximately 65% of the settlement funds, after payment of expenses, together with interest at the legal rate from January 2009 forward; (2) attending an ethics school offered by the State Bar; and (3) successfully submitting to, paying for, and implementing the recommendations of an evaluation by the State Bar's Law Practice Management Program within six months of reinstatement.

Wright sought review by the Review Panel, but it specifically adopted and incorporated the special master's factual findings and conclusions. The Review Panel adopted the recommendation for a one-year suspension, but it did not adopt the recommendation for a separate public reprimand, and it altered the first condition on reinstatement so as to require payment only to the daughter. Wright filed exceptions to the Review Panel Report and Recommendation, asserting that the special master and the Review Panel erred by overlooking facts in the record, by crediting the clients' testimony over hers; by finding a violation of any Bar Rule; and by finding suspension appropriate for any such violation.

As an initial matter, we find the evidence supports the conclusion that Wright violated Rules 1.4 and 1.5 (c) (2) in her dealings with these clients. As to the remaining violations, we note that the special

master was in the best position to determine the witnesses' credibility and that his findings of facts with regard to the violations of Rules 1.15 (I) and (II) do not appear to be unreasonable, given the testimony in this case. Accordingly, we agree with the Review Panel's conclusion that Wright violated Rules 1.4, 1.5 (c) (2), 1.15 (I) (b), 1.15 (I) (c), and 1.15 (II) (b). The maximum sanction for a violation of Rule 1.15 (I) or 1.15 (II) (b) is disbarment, and the remainder of the violations can be punished by a public reprimand.

In mitigation, we note that Wright, who has been practicing law for many years, has no prior disciplinary history and that she generally is a person of good character and reputation who has served the community in many civic and religious activities, that she has held positions of respect and trust in the legal community and in her personal life, and that she mentors young people and new attorneys. In aggravation of discipline, we note that Wright shows no remorse and refuses to acknowledge the possibility of wrongdoing in her dealings with these clients. Although Wright contends that she acted under an honest belief that she was entitled to retain the clients' settlement funds, her belief does not appear to be objectively reasonable in light of the record. We find particularly disturbing the special master's specific finding that Wright lied about having had a conversation with the daughter that allegedly authorized Wright to retain the daughter's settlement proceeds. See *In the Matter of Davis*, 290 Ga. 857, 860-861 (725 SE2d 216) (2012) ("This Court has little tolerance for attorneys who make false statements during disciplinary proceedings"); *In the Matter of O'Brien-Carriman*, 288 Ga. 239, 240 (702 SE2d 635) (2010) ("Making false statements to the Bar during the disciplinary process is a very serious matter which typically results in, at least, a significant suspension from the practice of law"). Accordingly, we accept the Report and Recommendation of the Review Panel and order that Wright be suspended for a period of one (1) year for her disciplinary violations. Wright's reinstatement will be conditioned upon her (1) paying $5,713.50 to the daughter, together with interest at the legal rate from January 2009 forward; (2) attending an ethics school offered by the State Bar; and (3) successfully submitting to, paying for, and implementing the recommendations of an evaluation by the State Bar's Law Practice Management Program within six months of reinstatement. Wright is reminded of her duties pursuant to Bar Rule 4-219 (c).

*One-year suspension with conditions. All the Justices concur.*

Decided November 25, 2013.

*Paula J. Frederick, General Counsel State Bar, Rebecca A. Hall, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Wilson, Morton & Downs, James E. Spence, Jr.*, for Wright.