306 Ga. 385
FINAL COPY

S19Y0977.  IN THE MATTER OF CHERYL JOYCE BRAZIEL.

PER CURIAM.

This disciplinary matter arises from a renewed petition for voluntary discipline filed by Cheryl Joyce Braziel (State Bar No. 275115), after we rejected her earlier petition, which had been filed before the issuance of a formal complaint. See *In the Matter of Braziel*, 303 Ga. 154 (810 SE2d 476) (2018) ("*Braziel I*").  In *Braziel I*, we noted uncertainty regarding the underlying facts and the violations that could be established. Upon remand, the State Bar filed a formal complaint, and we appointed S. Jeffrey Rusbridge as special master. Following discovery, Braziel filed a renewed petition for voluntary discipline, which she amended after an evidentiary hearing. The amended renewed petition sought a Review Panel reprimand or a public reprimand for Braziel's admitted violations of Rule 5.3 (a), (b), and (c) (2). The State Bar supported the petition. The special master's report recommends that the Court accept the

petition and impose a public reprimand. Given the extensive record generated on remand and the special master's factual findings, we agree that acceptance of the petition for voluntary discipline is appropriate.

The special master made the following factual findings. Braziel, who was admitted to the Bar in 2007, settled a client's personal injury claim with the liability insurer, and the client executed a limited liability release to enable pursuit of a claim against her own uninsured motorist ("UM") carrier. The client's UM policy provided reduced-limits coverage, meaning the amount of coverage was reduced by available liability insurance limits, but coverage could be restored to the extent that certain federal liens, such as a Medicaid lien, were satisfied from the liability settlement proceeds. Braziel's client had been treated at Grady Hospital, incurring charges of $24,384.77, and Braziel believed that the client was eligible to receive Medicaid and that the hospital charges should have resulted in the filing of a Medicaid lien, which would have

allowed recovery under the UM policy. However, Braziel had been unable to document the existence of a Medicaid lien.

Braziel recalled that she had received a lien letter from an attorney who represented Grady Hospital in another client's matter, and she wanted to contact that lawyer to ask his assistance in determining if a lien had been filed or would be filed with respect to her current client's hospital bill. Braziel testified that, while she was traveling outside of Georgia to obtain medical treatment, she called her assistant to ask her to pull the lien letter from the prior client's file, duplicate it, and place it in the new client's file, so that Braziel could contact Grady's lawyer for assistance. Braziel made the call to her assistant while driving in rural Mississippi, and, due to poor reception for the call, poor instructions, and poor training of the assistant, the assistant misunderstood her instructions. The assistant created a new lien letter patterned after the old one, but with the information for the new client and the expected amount of the lien. The result was a letter purportedly from Grady's lawyer to Braziel about a lien held by Grady in connection with Braziel's

representation of her current client. Braziel arrived at her office later that evening and saw the letter that had been created. Braziel admonished her assistant and gave her additional instructions in her duties as a legal assistant.

Rather than destroying the letter, however, Braziel faxed it that evening to Felecia Morris, an administrative service provider who has a law degree but is not a member of the Georgia Bar, and asked her to confirm the existence of the lien. Braziel testified that she explained the nature of the document to Morris and sent her the letter for internal, informational purposes only, as it contained the information Morris would need to track down the lien information. Six days later, Morris emailed the letter to the new client's UM carrier, which then forwarded the letter to Grady's lawyer. When Grady's lawyer contacted Braziel, Braziel promptly admitted what had occurred, took responsibility for the matter, and attempted to explain how the situation occurred. Braziel also severed her ties with Morris.

Morris was deposed and provided a materially different version of her interactions with Braziel. But the special master found Morris not credible and concluded that there was no credible evidence to contradict Braziel's assertion that she did not personally create the lien letter, send it to the UM carrier, or engage in any effort to make it appear that Grady had a lien on the case when it did not. Based on his factual findings, the special master concluded that Braziel violated Rules 5.3 (a), (b), and (c) (2) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d), but that there was insufficient evidence to establish any violation of Rules 4.1 or 8.4 (a) (2). Citing the pertinent American Bar Association Standards for Imposing Lawyer Sanctions (1992), the special master also found the following mitigating circumstances: Braziel's lack of prior disciplinary history, her lack of selfish motive or an intent to deceive, the existence of personal health problems that may have led to the misconduct, her efforts to rectify the consequences of the misconduct, her acceptance of responsibility and demonstration of remorse for what occurred, and her demonstration of a cooperative

5

attitude in the disciplinary proceedings. See ABA Standard 9.32 (a), (b), (c), (d), (e), and (l); see also *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996) ("[W]e look to the American Bar Association's standards for guidance in determining the appropriate sanction to impose."). The special master further noted that he found Braziel's statements of remorse and acceptance of personal responsibility to be sincere. The only aggravating factor that the special master found was Braziel's substantial experience in the practice of law. See ABA Standard 9.22 (i). The special master concluded that a public reprimand was the appropriate sanction. See ABA Standard 7.3.

The special master's factual findings are supported by the record, and we are not in a position to second-guess his credibility determinations. See *In the Matter of Ballew*, 287 Ga. 371, 376 (695 SE2d 573) (2010) ("We have reviewed the record in this case and conclude that the Special Master was in the best position to observe the parties' demeanor and credibility."); *In the Matter of Wright*, 294 Ga. 289, 293-294 (751 SE2d 817) (2013) (noting that "the special

master was in the best position to determine the witnesses' credibility" and determining that his findings "do not appear to be unreasonable, given the testimony in this case"). Based on those findings, we agree with the special master's legal conclusion as to the rules violations supported by the evidence. We also conclude that, consistent with this Court's precedents, a reprimand is the appropriate sanction on the facts presented here. See *In the Matter of Heitmann*, 297 Ga. 280 (773 SE2d 278) (2015) (public reprimand for violation of Rule 5.3 where independent contractor employed by attorney made unsolicited contact with prospective clients); *In the Matter of Ellis*, 296 Ga. 83 (764 SE2d 856) (2014) (Review Panel reprimand for violation of Rule 5.3 where staff member signed client's name on medical-financing application without client's knowledge); *In the Matter of Mashek*, 295 Ga. 179 (758 SE2d 309) (2014) (Review Panel reprimand for violations of Rules 5.3 (a), (b) and 7.3 (d) for staff's client solicitation of which lawyer should have known); *In the Matter of Grant*, 287 Ga. 131 (694 SE2d 647) (2010) (Review Panel reprimand for misconduct related to mishandling of

real estate closing and title insurance policies, and improper supervision of paralegal who stole client funds). And we agree with the special master that a public reprimand is the appropriate type of reprimand in this matter. Accordingly, the Court accepts the petition for voluntary discipline and directs that Cheryl Joyce Braziel be administered a public reprimand in open court pursuant to Bar Rules 4-102 (b) (3) and 4-220 (c) for her admitted violations of Rule 5.3 (a), (b), and (c) (2).

*Petition for voluntary discipline accepted. Public reprimand. All the Justices concur.*

Decided July 1, 2019.

Public reprimand.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, William J. Cobb, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Finch McCranie, Richard W. Hendrix*, for Braziel.