296 Ga. 618
FINAL COPY

S14Y0700. IN THE MATTER OF JOHN FLOYD WOODHAM.

PER CURIAM.

This disciplinary matter arises from bond validation proceedings in which attorney John Floyd Woodham (State Bar No. 775066) intervened on behalf of himself and Citizens for Ethics in Government, LLC, filed objections to the validation of the bonds, and later offered to withdraw the objections if developers concerned in the bonds paid a substantial amount of money. Following the filing of a grievance, the Investigative Panel of the State Bar of Georgia found probable cause to charge Woodham with violations of Georgia Rules of Professional Conduct 3.1, 3.5 (c), 4.2 (a), and 8.4 (a) (4). Woodham then filed a petition for voluntary discipline, in which he agreed to a Review Panel reprimand for violations of only Rules 3.5 (c) and 4.2 (a). Although the State Bar made no objection to the petition, we rejected it, noting that the petition did not address the alleged violations of Rules 3.1 and 8.4 (a) (4), the latter of which concerns "professional conduct involving dishonesty, fraud, deceit or misrepresentation" and is, therefore, among the most serious violations with which a lawyer can be charged. See In the Matter of Woodham, 291 Ga.

255 (728 SE2d 659) (2012).

After we rejected the petition for voluntary discipline, the State Bar filed a formal complaint, charging Woodham with violations of Rules 3.1, 3.5 (c), 4.2 (a), and 8.4 (a) (4). The State Bar, however, subsequently abandoned the charges for violations of Rules 3.1 and 3.5 (c). A special master[1] heard evidence on the remaining charges, and in his report and recommendation, the special master found that Woodham violated Rules 4.2 (a) and 8.4 (a) (4), and he recommended that Woodham be suspended for three months and receive a public reprimand. Both Woodham and the State Bar sought further review before the Review Panel, and in its report and recommendation, the Review Panel found only a violation of Rule 8.4 (a) (4), but it recommended that Woodham be suspended for six months and receive a Review Panel reprimand. The matter is now before this Court on the report and recommendation of the Review Panel. For the reasons that follow, we agree with the Review Panel that the evidentiary record shows no violation of Rule 4.2 (a), and we conclude that the record also fails to

---

[1] This Court appointed Thomas E. Cauthorn III as special master in this matter.

2

show clearly and convincingly a violation of Rule 8.4 (a) (4).[2] Because those were the only charges with which the State Bar proceeded before the special master, we dismiss these disciplinary proceedings.

1. According to the report and recommendation of the special master, the circumstances that led to this disciplinary matter are as follows:

> On October 29, 2008, District Attorney Paul Howard filed two bond validation proceedings in the Superior Court of Fulton County to confirm the issuance of alleged bonds by the Atlanta Development Authority. The first proceeding alleged the issuance of an amount not to exceed $70,000,000 for a project by 13th Street Holdings, LLC. The second alleged the issuance of an amount not to exceed $60,000,000 for a project by Mezzo Development, LLC.
>
> Both 13th Street Holdings, LLC and Mezzo Development, LLC ("Developers") are managed by Tivoli Properties, Inc. Scott Leventhal is the CEO of Tivoli Properties. Michelle Barnett and Daniel McRae were bond counsel for the Developers in those transactions.
>
> On November 17, 2008, [Woodham] filed complaints in intervention in each of the bond cases, objecting to the issuance of the proposed bonds. [Woodham] filed on his own behalf and on behalf of Citizens for Ethics in Government, LLC. [Woodham] did not file any claims against the Developers, but did raise relevant questions which related to whether the bonds in question should be validated. [Woodham]'s purpose in intervening was to defeat the [p]etitions for bond validation based upon his opinion that the proceedings involved bond transactions known as phantom bonds. [Woodham] opined that the overall result of such a phantom bond

---

[2] A disciplinary violation must be proved by clear and convincing evidence. See Ga. Bar Rule 4-221 (e) (2).

is an illegal and unconstitutional tax abatement in favor of the Developers.

Two days after filing the complaints in intervention, [Woodham] telephoned the offices of Tivoli Properties and asked to speak to the company's in-house counsel. When [Woodham] was told that the company no longer employed in-house counsel, he asked for the name of the company's outside litigation counsel. Later that day, Mr. Leventhal returned [Woodham]'s call and inquired why [Woodham] had called. [Woodham] advised Mr. Leventhal that he wanted to speak to someone other than the Developers' bond counsel about a possible resolution of the complaints in intervention. [Woodham] advised Mr. Leventhal [that] he was not prepared to discuss the matter further without a lawyer participating on the Developers' behalf.

Mr. Leventhal contacted attorney Patricia Roy, the Developers' litigation counsel. Ms. Roy called [Woodham], advised that she represented the [D]evelopers, and suggested that the two of them have a conference call with her client. [Woodham] and Ms. Roy exchanged e[-]mails regarding participation in a conference call. That evening[,] Ms. Roy spoke with [Woodham] to confirm that she would be on the line with Mr. Leventhal for a conference call. [Woodham] advised Ms. Roy that he wanted to discuss a possible resolution of the bond matters. [Woodham] and Ms. Roy ultimately agreed that all matters they discussed should remain confidential and that there would be no recording of the conversation. Ms. Roy and Mr. Leventhal separately discussed the conditions and agreed to be bound.

[Woodham] sent Ms. Roy an e-mail to confirm the terms of the conversation. Ms. Roy responded by e-mail[,] agreeing to all of the terms and stating she would initiate a conference call. Ms. Roy placed the call to Mr. Leventhal and [Woodham]. The three parties to the call were in three different locations. Mr. Leventhal began recording the conversation at some point after it began.

[Woodham] stated that[,] although he did not have an issue with the Developers, he believed the bond transactions to be illegal.

[Woodham] advised Mr. Leventhal that he would dismiss the complaints in intervention if the Developers would pay 1 [percent] of the bond issuance to him and Citizens for Ethics in Government. Mr. Leventhal advised [Woodham] [that] he would get back to him about the offer. He never did.

By this conduct, the special master found, Woodham violated Rules 4.2 (a) and 8.4 (a) (4). As noted earlier, the Review Panel found that the State Bar proved only a violation of Rule 8.4 (a) (4).

2. Commonly known as the "no-contact" or "anti-contact" rule, Rule 4.2 (a) provides that "[a] lawyer who is representing a client in a matter shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order." The special master concluded that, "[w]hen [Woodham] contacted the Developers without the consent of bond counsel in order to discuss settlement of the complaints in intervention, he violated [Rule] 4.2 (a)." The Review Panel disagreed, however, reasoning:

There is no dispute that [Woodham] communicated with counsel for Tivoli Properties and the CEO of Tivoli. . .on the subject of pending litigation when he knew that Tivoli (as the management company for the Developers) was represented by different counsel in the pending litigation. The question is whether

5

this conduct violates Rule 4.2 There is no direct authority in Georgia on this specific issue. Two advisory opinions from other jurisdictions provide guidance, American Bar Association Formal Opinion 06-443 (2006) and D. C. Ethics Opinion 331 (2005). Both opinions consider the analogous question of contact by an opposing lawyer with in-house counsel of an organization regarding a matter when the organization is represented in the same matter by outside counsel. ABA Opinion 06-443 provides, "In general, a lawyer may communicate with in-house counsel of a represented entity about the subject of the representation without obtaining the prior consent of the entity's other counsel." Likewise, D. C. Ethics Opinion 331 states, "In general, a lawyer may communicate with in-house counsel of a represented entity about the subject of the representation without obtaining the prior consent of the entity's other counsel."

Both opinions conclude that the safeguards inherent in the anti-contact rule are not necessary when the person being contacted is a lawyer. The D. C. Opinion makes the following observation, "We start by noting that the foregoing rationale for the anti-contact rule does not apply where a lawyer desires to contact an organization's in-house counsel. Such a communication would be lawyer[-]to[-]lawyer, and concerns about protecting the organization from overreaching and deception by the lawyer initiating the communication should not apply. Nor is it likely that in-house counsel would inadvertently make disclosures harmful to the organization, as a non-lawyer might do."

In this instance, [Woodham] participated in conversations with litigation counsel and the corporate representative of Tivoli regarding the pending litigation. Tivoli was represented by counsel in all substantive conversations regarding the pending litigation. . . . [T]he Review Panel finds that [Woodham]'s conduct does not fall within the scope and purpose of Rule 4.2. As noted in D. C. Ethics Opinion 331, "The problem of one lawyer trying to take advantage of the fact that an opponent may have multiple lawyers with varying degrees of knowledge or involvement is a different

issue."

(Footnotes omitted). Generally speaking, we agree with the analysis of the Review Panel.

First, we agree with the Review Panel that contact with in-house counsel about litigation in which the organization is represented by outside counsel generally does not violate Rule 4.2 (a). See generally American Bar Association Formal Opinion 06-443 (2006). Second, we agree with the Review Panel that the general rule for in-house counsel offers useful guidance in this case. When Woodham first contacted Tivoli Properties, he was attempting to make contact with its in-house counsel. When he learned that it had no in-house counsel, he discontinued his communications. There was nothing wrong with that. Later, it was Mr. Leventhal who reestablished contact with Woodham, and at that time, although Woodham disclosed in general terms the reasons for his earlier attempt to contact in-house counsel, he declined to discuss anything of substance with Mr. Leventhal without the presence of a lawyer for Tivoli. At that point, Mr. Leventhal asked Ms. Roy, an attorney, to facilitate further communications with Woodham about a possible resolution of the bond validation cases. When Ms. Roy agreed to do so, she undertook to represent Tivoli in connection with those

cases, even if only for the limited purpose of discussing a resolution of the cases with Woodham. Accordingly, when Woodham finally had a substantive discussion with Ms. Roy and Mr. Leventhal, he *was* communicating with and in the presence of a lawyer representing Tivoli in the bond cases, notwithstanding that she may never have entered an appearance in those cases and was not, therefore, counsel of record. On the facts of this case, we find no violation of Rule 4.2 (a).

3. Rule 8.4 (a) (4) forbids a lawyer to "engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation." The special master found that, "[w]hen [Woodham] asked the Developers to pay him 1 [percent] of the bond amount to dismiss his complaints in intervention, he violated [Rule] 8.4 (a) (4)." In support of this finding, the special master reasoned:

> The first principle of a bond validation proceeding is protection of the public, not pursuit of personal gain. [When Woodham proposed a resolution of his complaints in intervention,] [h]e as much as said . . . that he, and by extension the public, would suffer the illegality of the bond transactions if he was privately paid money. He thereby subverted the first principles of the bond validation proceeding. His conduct was dishonest because he sought to benefit personally, even though he states that his intention in filing the interventions was to [e]nsure the denial or dismissal of bond transactions he believed to be illegal.

In other words, by filing the complaints in intervention, Woodham implicitly represented that his purpose in doing so was to vindicate the public interest, rendering his later offer to compromise the public interest for private gain dishonest. The Review Panel agreed with this analysis. We do not.

Although the general purpose of the bond validation process may be to protect the public interest, that purpose is accomplished by permitting "[a]ny citizen of this state who is a resident of the county, municipality, or political subdivision desiring to issue the bonds [to] become a party to the proceedings . . . ." OCGA § 36-82-23 (concerning bond validation generally). See also OCGA § 36-82-77 (a) (concerning revenue bond validation) ("Any citizen of this state who is a resident of the governmental body which desires to issue such bonds may become a party to the proceedings . . . ."). Such a citizen may intervene and object to the validation of the bonds, and they may do so without any showing of their particular interest in the bond issue. Accordingly, they may do so only for the purpose of vindicating the public interest, or they may do so for ulterior and personal reasons.[3] Standing to intervene in a bond validation

---

[3] Consider, for instance, an intervention to object to the validation of bonds to fund a development near a residential neighborhood. If a resident of that neighborhood were qualified to intervene and did so, it would not matter whether his reason for doing so was to

9

proceeding does not depend on the reasons for which the intervention is made. For that reason, the entire premise of the finding of dishonesty in this case — that Woodham had somehow undertaken to represent the public by filing his complaints in intervention, only later to betray the public by his offer to settle for private gain — is misplaced. Yet, that was the entire foundation for the findings of the special master and the Review Panel that Woodham violated Rule 8.4 (a) (4).[4]

---

vindicate the public interest as an advocate of taxpayers generally or instead was to stop a development that would, in his view, impair his own quality of life in the neighborhood. His reason for intervening is immaterial to his right to intervene.

[4] Perhaps intervention should be forbidden to those who seek to do so only for personal gain, but that is a policy question for the legislature. See FDIC v. Loudermilk, 295 Ga. 579, 594 (3) (761 SE2d 332) (2014). We note, however, that substantial disincentives already exist for those who would abuse the right of intervention. Among other things, a court may award attorney fees against one asserting a frivolous claim in civil litigation, OCGA § 9-15-14 (a), against one bringing an action that "lacked substantial justification" or "was interposed for delay or harassment," OCGA § 9-15-14 (b), or against one who "unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures." Id. Indeed, in the very bond validation proceedings that led to these disciplinary proceedings, it appears that the validation court awarded more than $400,000 in attorney fees and expenses to the interested developers and the Atlanta Development Authority as a sanction against Woodham and Citizens for Ethics in Government under OCGA § 9-15-14, an award that was affirmed without opinion by the Court of Appeals in Woodham v. Atlanta Development Auth., 318 Ga. App. XXIV, Case No. A12A2334 (Nov. 29, 2012). By the way, we note the sanctions award only because it illustrates one of the several disincentives that exist for one who would be tempted to abuse the bond validation process, not because it would mitigate in any way a violation of the Rules of Professional Conduct.

The dissent would find that Woodham acted dishonestly for somewhat different reasons, namely, that Woodham filed his complaints in intervention in furtherance of a "dishonest" scheme to misuse the bond validation process to reap personal financial gain to which he would not have been entitled even if his objections to validation had prevailed. Such a scheme might well amount to an abuse of the litigation process and, therefore, a violation of Rules 3.1 or 3.5 (c).[5] But again, the State Bar abandoned the charges that Woodham violated those Rules, and whether Woodham violated Rule 3.1 or 3.5 (c) is not a question presented to us in this case. Rule 8.4 (a) (4) prohibits "professional conduct involving dishonestly, fraud, deceit or misrepresentation," that is, conduct that is intended or likely to mislead another. Neither the State Bar, the special master, the Review Panel, nor the dissent points to any false or misleading

_____

[5] Rule 3.1 (a) forbids a lawyer in the representation of a client to "file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another[.]" Rule 3.1 (b) forbids a lawyer in the representation of a client to "knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law." Rule 3.5 (c) forbids a lawyer to "engage in conduct intended to disrupt a tribunal." At least to some extent, these Rules forbid the same sort of conduct for which attorney fees and expenses might be awarded as a sanction under OCGA § 9-15-14. But because the State Bar abandoned the charges against Woodham for violating Rules 3.1 and 3.5 (c), we express no opinion about whether the evidence, in fact, shows a violation of those Rules.

11

conduct by Woodham in connection with his filing of the complaints in intervention or his attempts to secure a payment from the Developers. And simply calling his conduct "dishonest" — as the dissent does repeatedly — does not make it so. Woodham may have acted badly, he may have attempted to misuse a legal process, and he may have attempted to get money to which he had no legal claim, but there is no evidence that he misled or attempted to mislead the Developers about the filing of the complaints in intervention or the legal remedies to which the intervenors might be entitled in the bond validation proceeding. We do not think this conduct can be fairly characterized as "dishonest," and the dissent cites no authority for the proposition that it should be so characterized.

4. The dissent calls Woodham's conduct "egregious, improper and appalling," and we do not dispute those characterizations. We too are troubled by the conduct proved in the record. We offer no opinion about whether that conduct might amount to a violation of Rules 3.1 or 3.5 (c), insofar as the State Bar has abandoned its charges of such violations. We also express no opinion about whether Woodham violated Rule 8.4 (a) (4) by conduct other than that

alleged by the State Bar as a basis for the Rule 8.4 (a) (4) charge.[6] We conclude only that the State Bar failed by clear and convincing evidence to prove the alleged violations of Rules 4.2 (a) and 8.4 (a) (4) as charged by the State Bar. The State Bar having failed to prove the alleged violations on which it elected to proceed to hearing, these disciplinary proceedings are dismissed.

Dismissed. All the Justices concur, except Benham and Hunstein, JJ., who dissent.

---

[6] According to the record, a few weeks after Woodham offered to withdraw his complaints in intervention for one percent of the bond amounts (and after Woodham discovered that his offer had been brought to the attention of the validation court), Woodham prepared and sent a letter in which he said that he had intended to ask for only 0.1 percent of the bond amounts and that he intended to give the money to a homeless shelter. But the validation court and the special master found this letter was a misrepresentation of Woodham's actual intent at the time he extended the offer to the Developers, and the special master found that Woodham gave testimony about the letter in his disciplinary proceedings that was not credible. The State Bar did not, however, charge Woodham with violating Rule 8.4 (a) (4) by such conduct, nor did the special master or Review Panel identify such conduct as a basis for the finding that Woodham violated Rule 8.4 (a) (4). We express no opinion, therefore, about whether such conduct amounts to a violation of the Rule.

BENHAM, Justice, dissenting.

I respectfully disagree with the conclusion of the majority that the record fails to show clearly and convincingly a violation of Rule 8.4 (a) (4) as charged in the Bar's formal complaint against Woodham. Instead, upon review of the record, I agree with the conclusion of the trial court judge in the underlying case in which Woodham's conduct was manifested: Woodham's conduct was "egregious, improper and appalling to the [c]ourt and to the practice of law."[7] Accordingly, I dissent and would impose a six-month suspension and Review Panel reprimand, as recommended by the Report and Recommendation of the Review Panel.

Rule 8.4 (a) (4) forbids a lawyer to "engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation." In reaching its conclusion that the case against Woodham fails to show a violation of that rule, the majority relies upon the language of the bond validation statute which permits a private citizen of the political subdivision desiring to issue the bonds

---

[7] Georgia v. Atlanta Development Auth., Superior Court of Fulton County, Civil Action No. 2008CV159232, Order dated June 1, 2011, p. 32. This order has been appealed and affirmed without opinion. Woodham v. Atlanta Development Auth., 318 Ga. App. XXIV, Case No. A12A2334 (Nov. 29, 2012).

to intervene in a bond validation proceeding. According to the majority, the fact that Woodham offered to dismiss his complaints in intervention in exchange for private gain does not establish dishonesty because the statute permits him to intervene for either public or private reasons. But no lawyer may, without ethical consequences, intervene in a civil action for dishonest reasons. The majority's analysis of this issue ignores certain aspects of the record. The majority opinion looks only to the rationale of the Special Master's Report and Recommendation, which it rejects, and ignores the clear and convincing evidence that nevertheless demonstrates violation of the Rule.[8]

First, the combined amount of the two validation proceedings in which Woodham intervened was $1.3 billion. Thus, when Woodham offered to dismiss his complaints in intervention in these two proceedings, immediately upon filing them, in exchange for payment of one percent of the bond issuance, he was demanding payment of $1.3 million. Woodham admitted that at about the same time as the conversation at issue in this disciplinary action, he also

---

[8] This Court is not bound by the conclusions of law of the Special Master or the Review Panel. In the Matter of Morse, 265 Ga. 353 (1) (456 SE2d 52) (1995) ("In disciplinary proceedings, this court owes no deference to the review panel's conclusions of law. Whether an attorney has violated a particular standard of conduct is a legal question."); see also In the Matter of Ballew, 287 Ga. 371, 374 (695 SE2d 573) (2010).

2

contacted by telephone the corporate counsel of another developer with a pending bond validation proceeding in which he had intervened, and similarly offered to dismiss his filings in that proceeding if the developer would pay him one percent of the bond issuance. The Special Master found from the evidence that Woodham also contacted in-house counsel for yet a third developer involved at that time in a bond proceeding, but that developer's counsel declined to speak with Woodham and directed him back to counsel for the development authority that was to issue the bonds. This evidence supports the conclusion that Woodham engaged in a scheme to intentionally and purposefully misuse his right to intervene in these proceedings in a dishonest and fraudulent manner for the purpose of gaining a financial windfall. Had Woodham prevailed in these bond proceedings the result would have been denial of the bond validation petition, not recovery of substantial sums for himself. His complaints in intervention sought no monetary damages, other than a prayer for attorney fees incurred in the action. He alleged only that the bond transactions were unconstitutional and violated the statutory scheme.

Testimony was presented to the Special Master that authenticated the transcript of the telephone conversation between Woodham, the developer, and

3

the developer's litigation counsel, in which Woodham repeatedly states that he is prepared to litigate all the way to the Supreme Court unless the case is settled, saying: "Now, if you guys want to prevent that from happening, you have a way out, and I've just suggested it." This statement, in conjunction with the other evidence in the case, leads me to conclude that Woodham's demand for $1.3 million and his threat to drive up litigation expenses if this demand was not met, was not a legitimate attempt at settling his claim. Rather, it was a dishonest attempt to leverage his constitutional challenge into an extortion of money for himself.[9]

---

[9] At the hearing before the Special Master, the State Bar introduced into evidence the June 1, 2011, order of the trial court in the bond validation proceeding awarding attorney fees and litigation expenses in favor of the developers in the amount of $435,847.86, and against Woodham and the organization he represented, jointly and severally. Upon Woodham's objection, the Special Master ruled that the trial court's order was admitted only for demonstrating the procedural history of the case and not for the truth of the findings and conclusions contained in it. I recite some of the findings and conclusions contained in the order, however, because I believe they are instructive in this matter. The findings show that the trial court, after also having the opportunity to hear and consider witness testimony and other relevant evidence, made a number of findings and reached a number of conclusions of law that are consistent with the findings of the Special Master with respect to Woodham's dishonest motives in filing his complaints in intervention in these actions and then promptly offering to dismiss them in exchange for personal gain. The trial court found, for example:

• that Woodham intervened in the bond cases "for the singular purpose of extracting a $1.3 million payment from parties against whom Intervenors [Woodham and the organization named as a co-intervenor] had no legal claims, as a condition for dismissing the [c]omplaints in [i]ntervention."

• Woodham's threats to pursue the interventions all the way to the Supreme Court and thus to increase the developers' litigation expenses were made "in order to drive up the [developers'] litigation expenses if his conditions were not met."

4

As the majority notes, a trial court may, and did in this case, award statutory attorneys fees in the bond validation proceedings for the filing of frivolous claims or conduct that unnecessarily expand the proceedings. But the fact that sanctions were imposed pursuant to that statutory rule[10] does not relieve a member of the bar from sanctions that may be imposed for violation of Rule 8.4(a) (4).[11]

It is not the fact that Woodham betrayed the public interest by his offer to

---

- "Woodham, as a lawyer, is an officer of the court and engaged in egregious and improper conduct that no lawyer should engage in the practice of law. Woodham used his knowledge and deliberately tried to extract a large payment from [d]evelopers by his intervention in this matter when he knew he had no claims against these [d]evelopers. His conduct is egregious, improper and appalling to the [c]ourt and to the practice of law."

See June 1, 2001, order of the trial court, cited herein at footnote 7, supra. The trial court's order was affirmed without opinion by the Court of Appeals. Woodham v. Atlanta Development Auth., supra at footnote 7.

[10] Further, the trial court's order shows the amount of attorney fees awarded in the bond validation proceedings was based not only on the finding that Woodham had intervened in the proceedings without substantial justification, but also upon the finding that Woodham's other conduct in the proceedings caused the opposing parties unnecessary expense – for example, his contemptuous failure to attend court-ordered hearings and the filing of various motions that were deemed baseless and interposed solely for purposes of delay. See June 1, 2011 order of the trial court cited in footnote 7, supra. That conduct is unrelated to the conduct at issue in this disciplinary action.

[11] See In the Matter of Tucker, 295 Ga. 357 (759 SE2d 854) (2014), and also Nahmias, J., concurring, at 358-359 (suspension by a federal bankruptcy court as a result of the same conduct involved in the disciplinary action does not qualify as a mitigating factor in determining the appropriate discipline); In the Matter of Ortman, 289 Ga. 130 (709 SE2d 784) (2011), Nahmias, J., concurring at 131-132 (prior criminal punishment for the same conduct involved in the disciplinary action should not qualify as a mitigating factor on the disciplinary sanction to be imposed).

5

settle for private gain that makes his conduct a violation of the Rule. Nor did the State Bar's complaint alleging violation of Rule 8.4 (a) (4) charge that Woodham violated the Rule by offering to compromise the public interest in favor of private gain, as one might assume from the language of Division 4 of the majority opinion. Instead, the complaint sets forth a detailed description of Woodham's conduct in the validation proceedings and charged that this conduct was a violation of the Rule. The complaint along with the evidence of record supports a finding by this Court that, with an obvious intent to misuse the statutory intervention procedure, Woodham dishonestly utilized his complaints in intervention for the improper purpose of attempting to gain a small fortune for himself. For purposes of this disciplinary proceeding it matters not that Woodham had a right to intervene. Woodham attempted to "shake down" developers involved in proposed bond transactions for payments to which he would never have been entitled even if he prevailed and obtained orders barring the bond transactions. In my opinion, an attorney's scheme, as here, to extract, in effect, a payoff in exchange for dismissing a series of complaints that seek no damages whatsoever is unprofessional conduct involving a dishonest, fraudulent, and deceitful misuse of civil process that violates Rule 8.4 (a) (4).

I am authorized to state that Justice Hunstein joins in this dissent.

Decided February 16, 2015.

Dismissal.

Paula J. Frederick, General Counsel State Bar, Jenny K. Mittelman, Assistant General Counsel State Bar, for State Bar of Georgia.

Rosalind A. Rubens-Newell. Hunton & Williams, Matthew J. Calvert, Douglass P. Selby, amici curiae.

7