FINAL COPY
309 Ga. 675

S19G1026. INNOVATIVE IMAGES, LLC v. SUMMERVILLE et al.

NAHMIAS, Presiding Justice.

Innovative Images, LLC ("Innovative"), sued its former attorney James Darren Summerville, Summerville Moore, P.C., and The Summerville Firm, LLC (collectively, the "Summerville Defendants"), for legal malpractice. In response, the Summerville Defendants filed a motion to dismiss the suit and to compel arbitration in accordance with the parties' engagement agreement, which included a clause mandating arbitration for any dispute arising under the agreement. The trial court denied the motion, ruling that the arbitration clause was "unconscionable" and thus unenforceable because it had been entered into in violation of Rule 1.4 (b) of the Georgia Rules of Professional Conduct ("GRPC") for attorneys found in Georgia Bar Rule 4-102 (d). In Division 1 of its opinion in *Summerville v. Innovative Images*, 349 Ga. App. 592 (826

SE2d 391) (2019), the Court of Appeals reversed that ruling, holding that the arbitration clause was not void as against public policy or unconscionable. See id. at 597-598. We granted Innovative's petition for certiorari to review the Court of Appeals's holding on this issue.

As explained below, we conclude that regardless of whether Summerville violated GRPC Rule 1.4 (b) by entering into the mandatory arbitration clause in the engagement agreement without first apprising Innovative of the advantages and disadvantages of arbitration — an issue which we need not address — the clause is not void as against public policy because Innovative does not argue and no court has held that such an arbitration clause may *never* lawfully be included in an attorney-client contract. For similar reasons, the arbitration clause is not substantively unconscionable, and on the limited record before us, Innovative has not shown that the clause was procedurally unconscionable. Accordingly, we affirm the judgment of the Court of Appeals.[1]

---

[1] The trial court issued a separate order opening an automatic default against the Summerville Defendants under the "proper case" ground, see

1. *Facts and procedural history.*

As summarized by the Court of Appeals, the record shows the following:

> In July 2013, Innovative retained Mr. Summerville and his law firm to represent it in post-trial proceedings following an adverse civil judgment, and the parties executed an attorney-client engagement agreement that set out the terms of the representation (the "Engagement Agreement"). A section of the Engagement Agreement entitled "Other Important Terms" included a choice-of-law clause stating that the "agreement and its performance are governed by the laws of the State of Georgia." That section of the Engagement Agreement also included an arbitration clause (the "Arbitration Clause" or the "Clause") stating:
>
> > Any dispute arising under this agreement will be submitted to arbitration in Atlanta, Georgia under the rules and procedures of the State Bar of Georgia Committee on the Arbitration of Attorney Fee Disputes, if concerning fees, or by an arbitrator to be agreed to by the parties, if concerning any other matter. Alternatively,

---

OCGA § 9-11-55 (b). Innovative cross-appealed that order, arguing that the Summerville Defendants had failed to provide a reasonable explanation for their failure to timely file an answer. See *Summerville*, 349 Ga. App. at 604. In Division 2 of its opinion, the Court of Appeals affirmed the trial court's order, saying that "[f]or [the proper case] ground to apply, the defendant must provide a reasonable explanation for the failure to file a timely answer," and holding that the Summerville Defendants had done so. Id. at 605-606. We recently disapproved *Summerville* to the extent that it holds that a reasonable excuse is required to open a default under the proper case ground. See *Bowen v. Savoy*, 308 Ga. 204, 209 n.7 (839 SE2d 546) (2020). Innovative's petition for certiorari did not seek review of the Court of Appeals's decision on the cross-appeal.

you may choose to arbitrate any dispute arising under this agreement in Atlanta by a single arbitrator provided through the Atlanta office of Judicial Arbitration and Mediation Service ("JAMS"). The decision of any such arbitrator or arbitrators shall be binding, conclusive, and not appealable. In the event a dispute is not or cannot be arbitrated, the parties consent to the jurisdiction of and venue in the courts of Fulton County, Georgia.

In October 2017, Innovative filed the present legal malpractice action in the State Court of Fulton County against the Summerville Defendants for the allegedly negligent post-trial representation of Innovative in the underlying civil suit, asserting claims for . . . professional negligence, breach of contract, and breach of fiduciary duties. During the course of the litigation, the Summerville Defendants filed a motion to stay discovery, compel arbitration, and dismiss the legal malpractice action based on the Arbitration Clause (the "Motion to Compel Arbitration"). Innovative opposed the Motion to Compel Arbitration, contending, among other things, that the Arbitration Clause was unconscionable because the Summerville Defendants had not advised Innovative of the possible disadvantages associated with arbitration.

The trial court denied the Summerville Defendants' Motion to Compel Arbitration, agreeing with Innovative that the Arbitration Clause was unconscionable. The trial court reasoned that although the [Georgia Arbitration Code ("GAC"), OCGA § 9-9-1 et seq.,] does not prohibit the arbitration of legal malpractice claims, Rule 1.4 (b) of the [GRPC] . . . and American Bar Association ("ABA") Formal Opinion 02-425 support imposing a legal requirement on attorneys to explain to their prospective clients the possible disadvantages of binding arbitration

clauses contained in attorney-client engagement contracts, such as the waiver of the right to a jury trial, the potential waiver of broad discovery, and the waiver of the right to appeal. And, because there was no evidence in the record that the Summerville Defendants explained the Arbitration Clause to their prospective client, Innovative, before the Engagement Agreement was signed, the trial court found that the Arbitration Clause was unconscionable and thus unenforceable.

*Summerville*, 349 Ga. App. at 593-595 (footnotes omitted).

The trial court issued a certificate of immediate review, and the Court of Appeals granted the Summerville Defendants' application for interlocutory appeal. In its subsequent opinion reversing the trial court's order, the Court of Appeals's analysis bounced between case law and concepts related to whether a contract is unconscionable and case law and concepts related to whether a contract is void as against public policy. See id. at 595-598. The court ultimately "decline[d] to adopt a blanket rule that an arbitration clause in an attorney-client contract is unconscionable and against public policy if the attorney did not explain the potential disadvantages of the clause to his prospective client before execution of the contract." Id. at 597. The Court of Appeals also

noted that this Court "has not addressed whether ABA Formal Opinion 02-425 should be adopted as the proper interpretation of [GRPC] Rule 1.4 (b)," and "for these combined reasons," concluded "that the trial court erred in finding the Arbitration Clause unconscionable and in denying the Summerville Defendants' Motion to Compel Arbitration." Id. at 598.

Innovative petitioned for a writ of certiorari, which this Court granted, directing the parties to address two questions:

1. Under the Georgia Rules of Professional Conduct, is an attorney required to fully apprise his or her client of the advantages and disadvantages of arbitration before including a clause mandating arbitration of legal malpractice claims in the parties' engagement agreement?

2. If so, does failing to so apprise a client render such a clause unenforceable under Georgia law?

We have now determined that we need not answer the first question to answer the second question and decide this case.

2. *We can decide this case without answering the first question that we asked in granting certiorari.*

We consider first the question of whether an attorney violates

the GRPC by entering into an agreement with a client mandating arbitration of legal malpractice claims without first fully apprising the client of the advantages and disadvantages of arbitration. As it did in the courts below, Innovative argues that because GRPC Rule 1.4 (b) is identical to ABA Model Rule of Professional Conduct 1.4 (b), we should adopt the reasoning in ABA Formal Opinion 02-425 and conclude that Summerville violated the GRPC by entering into the Arbitration Clause without first apprising Innovative of the potential consequences of arbitration. Innovative also points to several other states that have relied on the reasoning in ABA Formal Opinion 02-425 to similarly interpret their respective rules of professional conduct.

Both GRPC Rule 1.4 (b) and ABA Model Rule 1.4 (b) say, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." In 2002, the ABA's Standing Committee on Ethics and Professional Responsibility issued Formal Opinion 02-425, which concluded, relying principally on ABA Model Rule 1.4 (b), that

lawyers must fully apprise their clients of the advantages and disadvantages of arbitration before including a provision in a retainer agreement mandating arbitration of legal malpractice claims. The ABA Committee reasoned that "[b]ecause the attorney-client relationship involves professional and fiduciary duties on the part of the lawyer that generally are not present in other relationships, the retainer contract may be subject to special oversight and review" (footnotes omitted), and that the requirement that a lawyer explain to the client the type of arbitration clause at issue in this case derives from those fiduciary duties.[2] Courts in several states have followed the reasoning of ABA Formal Opinion 02-425, interpreting their own rules of professional conduct regarding attorney-client relationships to require the same sort of

---

[2] In February 2002, a few weeks before the issuance of ABA Formal Opinion 02-425, ABA Model Rule of Professional Conduct 1.8, which deals with the client-lawyer relationship, was amended to add Comment 14 (now Comment 17). The comment says in pertinent part, "This paragraph does not . . . prohibit a lawyer from entering into an agreement with the client to arbitrate legal malpractice claims, provided such agreements are enforceable and the client is fully informed of the scope and effect of the agreement." This comment has not been added in the GRPC.

advice about prospective arbitration clauses. See, e.g., *Snow v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 176 A3d 729, 737 (Me. 2017); *Castillo v. Arrieta*, 368 P3d 1249, 1257 (N.M. Ct. App. 2016); *Hodges v. Reasonover*, 103 S3d 1069, 1077 (La. 2012).[3]

ABA formal opinions and the opinions of other state courts and bar associations interpreting professional conduct rules analogous to Georgia's may be persuasive to this Court's interpretation of the GRPC. See, e.g., *In the Matter of Woodham*, 296 Ga. 618, 621-623 (769 SE2d 353) (2015); *Frazier v. State*, 257 Ga. 690, 694 (362 SE2d 351) (1987). We have determined, however, that we can and should decide this case without deciding whether GRPC Rule 1.4 (b) prohibits attorneys from entering into agreements requiring arbitration of legal malpractice claims without their prospective

---

[3] In other jurisdictions, the bar association has adopted the same requirement by advisory opinion relying principally on conflict-of-interest rules. See, e.g., Vt. Advisory Ethics Op. 2003-07; Ariz. Ethics Op. 94-05. Innovative does not argue that an attorney's entering into a mandatory arbitration provision without the client's informed consent violates any of the GRPC's conflict-of-interest rules, and the courts below did not address that question. We too do not address those rules or any other rules not argued by Innovative.

clients' informed consent. Even if we assume — as we will for the remainder of this opinion — that such conduct *does* violate Rule 1.4 (b) such that an attorney may be subject to professional discipline, the Arbitration Clause in dispute here is neither void as against public policy nor unconscionable.

Rather than unnecessarily addressing this attorney ethics issue by judicial opinion, we will leave it to the State Bar of Georgia to address in the first instance whether this is a subject worthy of a formal advisory opinion about or amendment to the GRPC. We have before us only one factual scenario and the arguments only of the parties and one amicus curiae (the Georgia Trial Lawyers Association). Under these circumstances, the Bar's processes provide better opportunities to obtain input from all types of lawyers as well as the public and to consider all of the potentially applicable rules without limitation to a particular litigant's arguments. See Georgia Bar Rules 4-101 ("The State Bar of Georgia is hereby authorized to maintain and enforce, as set forth in rules hereinafter stated, Georgia Rules of Professional Conduct to be observed by the

members of the State Bar of Georgia and those authorized to practice law in the state of Georgia and to institute disciplinary action in the event of the violation thereof."); 4-402 and 4-403 (establishing the Formal Advisory Opinion Board and the process for promulgating formal advisory opinions concerning the GRPC); 5-101 to 5-103 (establishing the process for amending Georgia Bar rules). See also *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 SW3d 494, 506-508 (Tex. 2015) (Guzman, J., concurring) (explaining that defining the parameters of an ethics rule requiring attorneys to fully inform clients about the potential consequences of arbitration before entering into an agreement mandating arbitration of legal malpractice claims is "more aptly suited to [the bar] rulemaking process, which invites the input of the bench and bar," and that "[g]uidance is essential, but rather than articulating best-practices standards by judicial fiat, the rulemaking process provides a better forum for achieving clarity and precision").[4]

---

[4] We note that the State Bar of Georgia has not issued a pertinent formal advisory opinion or amended GRPC Rule 1.8 in the 18 years since the ABA

3. *The Arbitration Clause is not unenforceable because it is neither void as against public policy nor unconscionable.*

The trial court concluded that because Summerville's entering into the Arbitration Clause without Innovative's informed consent violated GRPC Rule 1.4 (b), the agreement was "unconscionable." The trial court's order cited no Georgia cases addressing whether a contract was void as against public policy or voidable as unconscionable. The Court of Appeals reversed the trial court's unconscionability ruling after a discussion that blended Georgia case law and concepts related to the somewhat distinct doctrines of unconscionable contracts and contracts that are void as against

issued its Formal Opinion 02-425 and added the comment to Model Rule 1.8, and this appears to be the first published Georgia case (civil or disciplinary) in which an arbitration clause of this type has been an issue. We do not know (and unlike the State Bar, we have no good way to ascertain) if Summerville's inclusion of such an arbitration clause in his firm's engagement agreement with Innovative was an aberration or reflective of a widespread or developing practice of using such arbitration provisions by Georgia lawyers, which might warrant further ethical guidance.

It is also important to recognize that discipline of lawyers for violating the GRPC does not occur through civil actions such as this but rather through the disciplinary process administered by the State Bar. See generally Georgia Bar Rules, Part IV, Chapter 2 (Disciplinary Proceedings); GRPC, Scope [18] ("[These rules] are not designed to be a basis for civil liability."). Thus, our decision in this case would not have a disciplinary effect on Summerville.

public policy, ultimately "declin[ing] to adopt a blanket rule that an arbitration clause in an attorney-client contract is unconscionable *and* against public policy if the attorney did not explain the potential disadvantages of the clause to his prospective client before execution of the contract." *Summerville*, 349 Ga. App. at 597 (emphasis added).

In this Court, Innovative argues that the Arbitration Clause is unenforceable because it violates public policy and also suggests that the clause is procedurally unconscionable because the Summerville Defendants did not prove that Innovative was a sophisticated client. As explained below, we conclude that — even assuming that Summerville violated GRPC Rule 1.4 (b) by entering into the Arbitration Clause without Innovative's informed consent — the clause is neither void as against public policy nor unconscionable and therefore is not unenforceable on either of those grounds.

(a) *The Arbitration Clause is not void as against public policy*.

Innovative's primary contention is that the Arbitration Clause is unenforceable because it is void as against public policy. We

disagree.

OCGA § 13-8-2 (a) says that "[a] contract that is against the policy of the law cannot be enforced[,]" and the statute then lists several types of contracts that are void as against public policy.[5] The list in OCGA § 13-8-2 (a) is expressly non-exhaustive, and Georgia courts have on occasion voided contracts as contravening public policy based on policies found outside of that and other Georgia statutes. See *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393-394 (282 SE2d 903) (1981) (holding void as against public policy an exculpatory clause in an agreement between a patient and a dentist and dental school because it violates public policy to contract away

---

[5] OCGA § 13-8-2 (a) says in full:

A contract that is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to:

(1) Contracts tending to corrupt legislation or the judiciary;

(2) Contracts in general restraint of trade, as distinguished from contracts which restrict certain competitive activities, as provided in Article 4 of this chapter;

(3) Contracts to evade or oppose the revenue laws of another country;

(4) Wagering contracts; or

(5) Contracts of maintenance or champerty.

the common law duty of reasonable care). See also *Edwards v. Grapefields, Inc.*, 267 Ga. App. 399, 404 (599 SE2d 489) (2004).

However, recognizing that "all people who are capable of contracting shall be extended the full freedom of doing so if they do not in some manner violate the public policy of this state," this Court has long emphasized that "courts must exercise extreme caution in declaring a contract void as against public policy" and may do so only "where the case is free from doubt and an injury to the public clearly appears." *Porubiansky*, 248 Ga. at 393 (citations and punctuation omitted). Importantly, a contract is void as against public policy not because the *process* of entering the contract was improper and objectionable by one party or the other, but rather because the *resulting agreement* itself is illegal and normally unenforceable by either party. See *Dept. of Transp. v. Brooks*, 254 Ga. 303, 312 (328 SE2d 705) (1985) ("'A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose

of effecting an illegal or immoral agreement or doing something which is in violation of law.'" (citation omitted)).

As both parties in this case recognize, binding arbitration agreements generally are not in contravention of the public policy of this State. To the contrary, "[i]n enacting the [GPC], the General Assembly established 'a clear public policy in favor of arbitration.'" *Order Homes v. Iverson*, 300 Ga. App. 332, 334-335 (685 SE2d 304) (2009) (citation omitted). There is nothing about attorney-client contracts in general that takes them outside this policy and makes mandatory arbitration of disputes arising under them illegal. In fact, the State Bar, with the approval of this Court, long ago established a program for the arbitration of fee disputes between attorneys and clients. See Georgia Bar Rules, Part VI. See also GRPC Rule 1.5, Comment [9] ("If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the State Bar of Georgia, the lawyer should conscientiously consider submitting to it.").

Nor are attorney-client agreements mandating arbitration of

prospective legal malpractice claims categorically against public policy in Georgia. The General Assembly effectively excluded *medical* malpractice claims from the GAC. See OCGA § 9-9-2 (c) (10) (excluding from the GAC "[a]ny agreement to arbitrate future claims arising out of personal bodily injury or wrongful death based on tort"). But it did not similarly exclude *legal* malpractice claims. Moreover, the ABA's Standing Committee on Ethics and Professional Responsibility and all of the states that have followed the reasoning of ABA Formal Opinion 02-425 agree that attorney-client agreements mandating arbitration of future legal malpractice claims without limiting the scope of the lawyer's potential liability are not prohibited per se; instead, only the *process* of entering into such arbitration clauses is regulated by requiring the lawyer to obtain the client's informed consent. See, e.g., ABA Formal Op. 02-425; *Snow*, 176 A3d at 736; *Castillo*, 368 P3d at 1257; *Hodges*, 103 S3d at 1077.[6] Innovative and the amicus curiae take the same

---

[6] As explained in ABA Formal Opinion 02-425:
The concern most frequently expressed about provisions

position.

Nevertheless, citing one case from this Court and a few from the Court of Appeals in which contracts that implicate the attorney-client relationship were held void as against public policy, Innovative argues that when an attorney violates the GRPC with regard to an engagement agreement, the resulting agreement contravenes public policy and is therefore void. See *AFLAC, Inc. v. Williams*, 264 Ga. 351, 353-354 (444 SE2d 314) (1994); *Eichholz Law Firm, P.C. v. Tate Law Group, LLC*, 310 Ga. App. 848, 850-851 (714 SE2d 413) (2011); *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 65-

> mandating the use of arbitration to resolve fee disputes and malpractice claims stems from [ABA Model] Rule 1.8 (h) [which is substantially identical to GRPC Rule 1.8 (h)], which prohibits the lawyer from prospectively agreeing to limit the lawyer's malpractice liability unless such an agreement is permitted by law and the client is represented by independent counsel. Commentators and most state bar ethics committees have concluded that mandatory arbitration provisions do not prospectively limit a lawyer's liability, but instead only prescribe a procedure for resolving such claims. The Committee agrees that mandatory arbitration provisions are proper unless the retainer agreement insulates the lawyer from liability or limits the liability to which she otherwise would be exposed under common or statutory law.

(Footnote omitted.)

66 (537 SE2d 670) (2000); *Brandon v. Newman*, 243 Ga. App. 183, 187 (532 SE2d 743) (2000). We do not read these cases in the way Innovative does.[7]

In *Williams*, without any mention or analysis of the then-applicable rules of professional conduct, we held that a provision in an attorney's retainer agreement that required the client to pay liquidated damages in the event the client terminated the attorney was unenforceable because it prevented the client from exercising the client's "'absolute right to discharge the attorney and terminate the relation at any time, even without cause.'" *Williams*, 264 Ga. at 353 (citation omitted). No amount of advice from the attorney to the client could have rendered the damages provision lawful, because as a matter of public policy, "[A] client must be free to end the relationship whenever 'he ceases to have absolute confidence in . . . the attorney,'" and "[r]equiring a client to pay damages for terminating its attorney's employment contract eviscerates the

---

[7] Our reading of these cases makes it unnecessary to decide whether they were all correctly decided.

client's absolute right to terminate." Id. at 353 (citations and punctuation omitted). Similarly, in the three Court of Appeals cases cited by Innovative, that court held void as against public policy what the court deemed to be flatly illegal agreements affecting the attorney-client relationship. See *Eichholz*, 310 Ga. App. at 850-853 (voiding a fee-splitting agreement in which an attorney was to receive a portion of a contingency fee that was earned after he had been discharged, citing case law and GRPC Rule 1.5 (e) (2)); *Nelson & Hill*, 245 Ga. App. at 65-66 (in an alternative holding, noting that evidence of an oral contingency fee agreement would be inadmissible to support a quantum meruit claim because such an unwritten agreement violated public policy, citing *Williams*, a then-applicable standard of conduct, and an advisory opinion interpreting that standard); *Brandon*, 243 Ga. App. at 186 (voiding an attorney referral reward based on an illegal fee-splitting agreement between an attorney and a non-lawyer, citing a then-applicable disciplinary standard).

As these cases and the list enumerated in OCGA § 13-8-2 (a)

illustrate, a contract is void as against public policy when the agreement itself effectuates illegality; no change in the *process* of entering into such an agreement will render it legal and fully enforceable. Because the Arbitration Clause in dispute here would be lawful if (as Innovative argues and we are assuming) Summerville had obtained Innovative's informed consent in compliance with GRPC Rule 1.4 (b), the clause is not void as against public policy. See *Watts v. Polaczyk*, 619 NW2d 714, 717-718 (Mich. Ct. App. 2000) (concluding that even though the State Bar of Michigan had issued informal advisory opinions saying that a lawyer should allow a client to seek independent counsel before entering into a retainer agreement mandating arbitration of legal malpractice claims, the arbitration clause at issue had been entered in violation of those opinions, and the attorney might face a disciplinary proceeding, the arbitration clause was not void as against public policy because such binding arbitration agreements are permissible under Michigan law).

(b) *The Arbitration Clause is not substantively or procedurally*

*unconscionable.*

Although Innovative does not specifically argue in this Court that the Arbitration Clause in dispute is unconscionable, it does suggest that the Clause was procedurally unconscionable, arguing that the Summerville Defendants did not prove that Innovative was a sophisticated client. Moreover, as noted previously, the Court of Appeals conflated the analyses for whether a contract is void as against public policy with whether it is unconscionable. We therefore turn to the question of whether the Arbitration Clause is unenforceable because it is unconscionable.

This Court has defined an unconscionable contract as one that "'no sane man not acting under a delusion would make and that no honest man would take advantage of,'" one that is "'abhorrent to good morals and conscience,'" and "'one where one of the parties takes a fraudulent advantage of another.'" *NEC Technologies, Inc. v. Nelson*, 267 Ga. 390, 391 n.2 (478 SE2d 769) (1996) (citations

omitted).[8] We examine unconscionability from the perspective of *substantive* unconscionability, which "looks to the contractual terms themselves," and *procedural* unconscionability, which considers the "process of making the contract." Id at 392.

Innovative makes no argument that the Arbitration Clause in dispute is substantively unconscionable. If an arbitration clause of this type were substantively unconscionable, no amount of advice from an attorney would render it fully enforceable; it would be voidable or operable at the election of the injured client. See *Brooks*, 254 Ga. at 313. But as discussed above, Innovative concedes that the Arbitration Clause would be mutually enforceable if the engagement agreement had been entered into after Summerville fully apprised

---

[8] *NEC Technologies* involved a contract that was subject to the Georgia Uniform Commercial Code, so we interpreted the doctrine of unconscionability in that case consistent with authority on unconscionability under the UCC. See 267 Ga. at 391; OCGA § 11-2-302. But the basic standards that we set forth in *NEC Technologies* were drawn from common-law unconscionability cases, and we have since applied them in a non-UCC case. See *Dept. of Transp. v. American Ins. Co.*, 268 Ga. 505, 509-510 n.19 (491 SE2d 328) (1997) (noting that "principles of unconscionability [are] not limited to commercial settings"). See also John K. Larkins, Jr., Ga. Contracts Law and Litigation § 3:18 (2019) (explaining that "there has been a virtual merger of the common law and UCC doctrine of unconscionability in Georgia").

Innovative of the potential consequences of arbitration. Moreover, the General Assembly has expressed a policy permitting arbitration agreements in the GAC, and arbitration can be beneficial to either attorneys or clients, so we cannot say that no sane client would enter a contract that mandated arbitration of future legal malpractice claims and no honest lawyer would take advantage of such a provision. See Louis A. Russo, *The Consequences of Arbitrating a Legal Malpractice Claim: Rebuilding Faith in the Legal Profession*, 35 Hofstra L. Rev. 327, 334-337 (2006) (explaining a number of potential benefits to clients of arbitrating legal malpractice claims, including speed, efficiency, and confidentiality).

As for procedural unconscionability, Innovative suggests that the Arbitration Clause is unconscionable because the Summerville Defendants did not prove that Innovative was a sophisticated client. But Innovative improperly shifts the burden of proof: where, like other contracts, a binding arbitration agreement is bargained for and signed by the parties, it is the complaining party that bears the burden of proving that it was essentially defrauded in entering the

agreement. See, e.g., *R. L. Kimsey Cotton Co., Inc. v. Ferguson*, 233 Ga. 962, 966-967 (214 SE2d 360) (1975) (holding that the trial court erred in denying the plaintiff's motion for summary judgment seeking enforcement of contracts that the defendants argued were unconscionable because the defendants did not sufficiently prove unconscionability). See also *Saturna v. Bickley Constr. Co.*, 252 Ga. App. 140, 142 (555 SE2d 825) (2001) (explaining that "'the mere existence of an arbitration clause does not amount to unconscionability'" (citation omitted)).

Innovative has not met its burden. This case was adjudicated on a motion to dismiss and to compel arbitration, and there is no evidence in the limited existing record that the Summerville Defendants took fraudulent advantage of Innovative by including the Arbitration Clause in the Engagement Agreement. Innovative argued in the trial court that the Arbitration Clause was "unconscionable" only because it violated the GRPC, not because it was the result of fraud. Innovative now argues that there is no evidence in the record to support a finding that it *was* a

sophisticated client, such that a finding of unconscionability is not foreclosed. But the record indicates that Innovative is a business that had been involved in litigation before entering the Arbitration Clause, and in any event, "'lack of sophistication or economic disadvantage of one attacking arbitration will not amount to unconscionability'" without more. *Saturna*, 252 Ga. App. at 142 (citation omitted). Accordingly, Innovative has not proven that the Arbitration Clause is unconscionable. See *NEC Technologies*, 267 Ga. at 394.

(c) In summary, whether or not a lawyer may be subject to professional discipline under GRPC Rule 1.4 (b) for entering into an engagement agreement with a client requiring the arbitration of future legal malpractice claims without first fully apprising the client of the advantages and disadvantages of arbitration, such an arbitration clause is neither void as against public policy nor substantively unconscionable, and Innovative has not proven that the Arbitration Clause at issue here is procedurally unconscionable either. Because Innovative has not established that the Arbitration

Clause is unenforceable on these grounds, we affirm the judgment of the Court of Appeals.

*Judgment affirmed. All the Justices concur.*

Decided September 8, 2020.

Certiorari to the Court of Appeals of Georgia — 349 Ga. App. 592.

*Warren R. Hinds*, for appellant.

*Hawkins Parnell & Young, Kathryn S. Whitlock, Kelli K. Steele*, for appellees.

*Caleb F. Walker; Taulbee Rushing Snipes Marsh & Hodgin, Daniel B. Snipes*, amici curiae.