318 Ga. 277
FINAL COPY

S23Y1117, S23Y1119. IN THE MATTER OF DERRIC
CROWTHER (two cases).

PER CURIAM.

These disciplinary matters arose from the conduct of Derric
Crowther (State Bar No. 198838) in two separate cases. The matters
are currently before the Court on the report and recommendation of
the State Disciplinary Review Board ("Review Board"), which
reviewed the report and recommendation of Special Master Jo Carol
Nesset-Sale at the request of Crowther pursuant to Bar Rules 4-214
and 4-216. The Special Master recommended that Crowther be
disbarred for his violations of Rules 1.3, 1.4, 1.5, 1.8 (e), 1.15 (I), 1.15
(II), and 8.4 (a) (4) of the Georgia Rules of Professional Conduct
("GRPC"), found in Bar Rule 4-102 (d). The maximum penalty for a
single violation of Rule 1.3, 1.15 (I), 1.15 (II), or 8.4 (a) (4) is
disbarment, and the maximum penalty for a single violation of Rule
1.4, 1.5, or 1.8 (e) is a public reprimand. The Review Board adopted

the Special Master's findings of fact and conclusions of law but recommended that Crowther receive a four-year suspension. Both the Bar and Crowther filed exceptions in this Court.

The misconduct at issue involves allegations of Crowther's systematic violations of the trust accounting rules, as well as his failure to resolve a dispute with one of his clients over settlement funds, charging that client an excessive fee, and disbursing all of the settlement funds to himself or his law firm despite the ongoing dispute with the client. In recommending a four-year suspension, the Review Board disagreed with the Special Master only about the balance of aggravating and mitigating factors and relied on *In the Matter of Favors*, 283 Ga. 588 (662 SE2d 119) (2008), to support its recommendation. However, as explained below, the Board's recommendation is not supported by our precedent, including *Favors*, or by the records in these matters. Accordingly, after considering the records and both parties' exceptions to the Board's report and recommendation, we conclude that disbarment is appropriate for Crowther's misconduct in these two cases.

1. Procedural History

The State Bar initially pursued four separate complaints against Crowther but dismissed two of the matters. The remaining cases were State Disciplinary Board Docket ("SDBD") No. 7134 and SDBD No. 7390. In SDBD No. 7134, Crowther was charged with violating Rules 1.8 (e); 1.15 (I) (a), (b), (c), and (d); and 1.15 (II) (a) and (b). In SDBD No. 7390, he was charged with violating Rules 1.3, 1.4, 1.5, 1.15 (I), 1.15 (II), and 8.4 (a) (4). During litigation of these matters, Crowther filed two petitions for voluntary discipline, requesting either a public reprimand or a three-month suspension to resolve all pending matters. The Special Master rejected both petitions. Based on Crowther's admissions, the Bar filed a motion for summary judgment in SDBD No. 7134, which was granted as to Rules 1.8 (e); 1.15 (I) (a), (b), and (c); and 1.15 (II) (b). The Special Master granted summary judgment to Crowther only on Rule 1.15 (II) (a),[1] concluding that he did not violate that subsection by

---

[1] Rule 1.15 (II) (a) provides, in relevant part, that all funds "held by a lawyer in any other fiduciary capacity shall be deposited in and administered from a trust account."

3

delegating to his office manager the task of administering his trust account. As to SDBD No. 7390, the Bar filed a motion for summary judgment, which the Special Master granted in its entirety. The Special Master held a hearing on aggravation and mitigation on May 24 and 25, 2022.

In her report and recommendation, the Special Master noted that SDBD No. 7390 arose from a 2019 grievance filed by a client who had previously filed a grievance against Crowther in 2013 that was dismissed in 2014. The instant formal complaint was based on Crowther's actions that occurred between 2014 and 2019. The Special Master concluded that the four-year statute of limitation and two-year tolling provision in Bar Rule 4-222 (a) "authorize[d] a look-back to February 4, 2014, the date of the dismissal [of the 2013 grievance], or September 4, 2013, the date of the [2013] grievance, which would be the farthest reach of the six-year look-back." The Special Master observed that she could consider matters outside of the statute of limitation, which would provide "essential context" and would be relevant to resolving issues involving aggravation and

4

mitigation, Crowther's mental state, restitution, and a pattern of misconduct.

2. Special Master's Report and Recommendation

(a) SDBD No. 7390

In 2006, the client filed a pro se medical malpractice action against a Macon hospital on behalf of herself, her siblings, and as the administratrix of her mother's estate (collectively, "plaintiffs"), alleging malpractice by the hospital's nurses in connection with her mother's death. Crowther entered the case in 2007. The attorney-client relationship was governed by a 2009 Retainer Agreement, which contained a handwritten amendment stating that "[t]his contract was modified due to client agreeing to pay a portion not to exceed $25,000.00 of the legal expenses." The client paid Crowther $25,000 for legal expenses between 2007 and 2009. The Retainer Agreement also provided that if the case settled, Crowther's law firm would "endorse any check made out to us or to either you or us and deposit it in our trust account. *If the check requires your signature as well, we will advise you immediately so that you can come in and*

*endorse the check*"; the firm would then schedule a meeting with the client to collect her money and review how the funds had been disbursed, which would include a statement detailing "exactly where the money has gone (your proceeds, attorney[ ] fees, payments to medical providers, other expenses, etc.)." (Emphasis supplied.)

In 2012, Crowther learned from a new expert that the nurses had not actually deviated from the applicable standard of care. He pursued settlement with the hospital, and the parties settled in August 2012. The hospital issued two checks totaling $187,500, with a $7,500 check paid directly to a defense expert and the remaining $180,000 paid to the order of the client, individually and as administratrix of her mother's estate; to her siblings; and to Crowther and his law firm. At the time Crowther received the check, he had not obtained releases of liability from the plaintiffs, which were required under the terms of the settlement. The reverse side of the check showed that Crowther deposited it into an account that is now closed, and that he had endorsed it for himself and "w/p per k" for the plaintiffs. No one else endorsed the check. Crowther claimed

6

during the disciplinary proceedings that the Retainer Agreement authorized him to endorse and deposit the check and that the client had given him permission over the phone to endorse it, but the client testified that she never gave Crowther such permission. The Special Master found Crowther's testimony not credible and rejected his reading of the Retainer Agreement, noting that the phrase "w/p per k" meant "with permission per contract," but the Retainer Agreement did not authorize Crowther to endorse a check made out to both his law firm *and* the plaintiffs without also getting the plaintiffs to endorse it. The Special Master observed that the client did not even see the settlement check until 2016, when an attorney for the hospital gave her a copy.

On September 19, 2012, the parties informed the court of the settlement and that Crowther had not yet obtained the requisite releases from the plaintiffs. The court dismissed the case without prejudice, ordering that Crowther "shall not distribute the proceeds of any settlement funds until all plaintiffs have executed the negotiated releases." A medical lienholder was entitled to some of

the settlement funds pursuant to a medical lien, but before making any disbursements, Crowther needed to negotiate and reduce the amount of the lien. During the disciplinary hearing, Crowther asserted that he believed that the order prohibited a distribution to the plaintiffs until they signed the releases but did not prohibit a distribution to himself and his firm. Thus, Crowther distributed to himself $46,875, which he testified was his attorney fee, calculated as 25 percent of the total $187,500 settlement. However, the Special Master found that the order was "unequivocal" that Crowther had to obtain executed releases from the plaintiffs before he could disburse *any* of the funds. In October 2012, when the releases had still not been executed, the hospital filed a motion to enforce the settlement agreement, requesting that the court dismiss the case with prejudice to prevent any attempt by the client to relitigate the claims. The court gave Crowther two weeks to respond, and dismissed the case with prejudice when he did not. To date, the plaintiffs have not signed the releases and have received no money from the settlement.

The Special Master found that between the dismissal of the first grievance in February 2014 and April 2016, Crowther had removed the settlement funds from his now-closed trust account. The Special Master stated that in addition to attorney fees, Crowther distributed to his law firm reimbursements for costs, fees, and expenses totaling $131,476.08. Crowther could not say how the funds had been spent because he did not keep individual client ledgers, and he testified that he no longer had the bank records and could not obtain them because the bank did not keep records that far back. He testified at his 2020 deposition in the disciplinary proceedings that expenses and attorney fees consumed all the funds, so his client was entitled to nothing.

The client requested an accounting from Crowther in two certified mailings in 2014, to which he did not respond and which he later claimed he did not receive. On April 14, 2016, the client made a written request for her file; Crowther acknowledged that request and said she could pick it up in June of that year. In further correspondence during the summer of 2016, the client expressed

frustration about not receiving the file yet. An attorney reached out to Crowther on behalf of the client, and in an August 4, 2016 letter, Crowther stated that if the attorney represented the client, he would no longer communicate with the client directly. He also mentioned that the client owed him $5,997.20 for a copy of her file that he had made. The Special Master found that the attorney did not become the client's lawyer as a result of this communication, and no lawyer except Crowther had ever represented the client in the post-settlement phase of the case. The Special Master observed that the client had requested her original file, and she did not agree to pay for copies.

By September 2019, the client had received neither proceeds from nor an accounting of the $180,000, so she filed a second grievance. In his response to the formal complaint, Crowther stated under oath that, per the terms of the 2012 court order, he could not distribute the funds until the plaintiffs had executed releases of liability and he had negotiated the medical lien. Crowther also stated that the client had incurred additional expenses for the copies

of her file. However, the medical liens were never negotiated or settled, and none of the proceeds were held separately for the lienholder or the client until a determination of their interests had been made. The Special Master found that Crowther had declared unilaterally that there was no fee dispute and that he had spent all of the money because the funds were not presently held in any of his trust accounts.

In response to the 2013 and 2019 grievances, and at the 2022 aggravation/mitigation hearing, Crowther submitted three "draft closeout statements" reflecting the breakdown of fees, costs, and expenses, which he had never previously provided to the client. The 2013 draft closeout reflected attorney fees of $62,500 (calculated based on 33.33 percent instead of 25 percent as stated in the Retainer Agreement) and expenses of $95,154.34, and the portion owed to the client was $34,081.16. The Special Master observed that the Retainer Agreement provided that the firm would "pay up front any costs in proceeding with your claim, such as travel, fees for copying records, court costs, and the like," and those expenses would

be reimbursed from the settlement funds. The Special Master noted that some of the itemized fees in the 2013 draft closeout were $20,341.12 for photocopies; "standard telephone fee[s]" for maintaining a landline and cell phone; meals billed at the per diem rate rather than actual cost; and various office supplies. The 2013 draft closeout also included the cost of providing every student in Crowther's trial advocacy class[2] with a complete set of discovery and pleadings, and costs associated with a mock trial, focus groups, and a psychodramatist. While the attorney fees were correctly calculated as 25 percent of the settlement in the 2019 and 2022 draft closeouts, the 2022 draft closeout had a line item of "0" for the medical lien, and in the 2019 draft closeout, the copying fees included $15,364 in post-settlement copying costs, reflecting in part the cost of the two copies of the client's file made in 2016, billed at $5,997.20 each.

---

[2] In his November 25, 2013 response to the client's 2013 grievance (which he attached as "Ex. 2" to his 2020 supplemental answer to the notice of investigation of the 2019 grievance), Crowther stated that the client allowed him to use her case as a case study for his trial advocacy students, that they reviewed parts of the case in class each week, that he printed all of the discovery and pleadings for his students, and that he had printed more than 55,000 pages in connection with the client's case.

Crowther testified in his 2020 disciplinary deposition that the client's up-front $25,000 payment was an advance of attorney fees because he had agreed to reduce his contingency fee to 25 percent. In contrast, the client testified that she had asked Crowther how much the case would cost, and he said the total expenses would be $25,000, but she also contradictorily testified that she may have been obligated to pay expenses beyond that amount. Citing principles of statutory construction in construing the fee agreement, the Special Master resolved this ambiguity and found that the handwritten amendment in the Retainer Agreement limited the client's responsibility for expenses to $25,000. The Special Master found neither the 2013 nor the 2019 draft closeout documents had a line item for this payment, and Crowther did not give the client an accounting of or invoice for the payment.

(i) Rule 1.3[3]

---

[3] Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client," and defines "reasonable diligence" to mean that "a lawyer shall not without just cause to the detriment of the client in effect willfully abandon or willfully disregard a legal matter entrusted to the lawyer."

The Special Master concluded that Crowther violated Rule 1.3 by failing to pursue strategies to close the case other than futilely attempting to have the plaintiffs sign releases, opining that "[l]eaving the matter in a moribund, unattended state for a decade was not the answer." The Special Master further concluded that Crowther violated Rule 1.3 by ceasing all communication with the client in 2016, indicating that he had abandoned her, and by failing to diligently return her file after she requested it.

(ii) Rule 1.4[4]

The Special Master concluded that Crowther violated Rule 1.4 by failing to provide reasonable, necessary, and honest

---

[4] Rule 1.4 provides in relevant part that
(a) A lawyer shall:
   (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0 (l), is required by these rules;
       . . .
   (3) keep the client reasonably informed about the status of the matter; [and]
   (4) promptly comply with reasonable requests for information[.]
       . . .
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

14

communication to the client about his disbursal of the settlement funds. In particular, the Special Master noted that in his response to the 2013 grievance, Crowther stated that the client was aware that the settlement proceeds had not been disbursed because she had not signed the release, and in his 2020 supplemental answer to the notice of investigation, he stated that he had not made the disbursements because the case had not concluded.

(iii) Rule 1.5

The Special Master stated that to comply with Rule 1.5 (a),[5] a lawyer must determine a reasonable basis for costs and fees charged

---

[5] A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
   (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
   (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
   (3) the fee customarily charged in the locality for similar legal services;
   (4) the amount involved and the results obtained;
   (5) the time limitations imposed by the client or by the circumstances;
   (6) the nature and length of the professional relationship with the client;

15

to a client; that fees cannot be used to generate profit; and that only "hard costs" like court reporter fees and costs of a deposition transcript can be passed to the client if the fee agreement permits. But "soft costs" like in-house copying must be calculated to determine the appropriate basis for the per-copy charge, and imposing administrative fees to cover soft costs or to increase office profits to the detriment of the client is prohibited under Rule 1.5. See also Comment 1 to Rule 1.5 (providing that lawyer may seek reimbursement of services like in-house copying or phone services "either by charging a reasonable amount to which the client has agreed in advance or by charging an amount that reasonably reflects the cost incurred by the lawyer").

The Special Master stated that Crowther knew or should have known that the Retainer Agreement did not allow him to charge the client over $131,000 in costs and expenses. She examined each of the

---

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

draft closeouts in detail, and concluded that they contained "clearly excessive, unreasonable fees and deceptive fees," in violation of Rule 1.5 (a). The Special Master further noted that the draft closeouts contained charges for administrative costs (such as photocopies and phone lines) for the maintenance of Crowther's law firm, to which the client did not consent. The Special Master stated that line items that were not actual reimbursements (such as meals, phone lines, and copying costs) allowed Crowther to make extra profit from the client. The Special Master found that the fees and rates in the draft closeouts were not disclosed in the Retainer Agreement and that many of the fees were not comparable to the types listed in the Agreement.

The Special Master further concluded that Crowther violated Rule 1.5 (a) by charging the client $5,997.20 for a copy of the file he made for himself before giving her the original file. The Special Master concluded that this action violated Crowther's fiduciary obligation to the client, and his communications about it were deceptive, including his failure to disclose that he did not intend to

give her the original file and that the charge for the copy would be taken out of the settlement funds.

As to Rule 1.5 (c),[6] the Special Master observed that Crowther acted as though the case was completed, even though he had not obtained the executed releases from the plaintiffs; negotiated with the medical lienholder; assessed his outstanding expenses and fees

---

[6] (1) A fee may be contingent on the outcome of the matter for which the service is rendered . . . . A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

(2) Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the following:

  (i) the outcome of the matter; and,

  (ii) if there is a recovery showing:

    (A) the remittance to the client;

    (B) the method of its determination;

    (C) the amount of the attorney fee; and

    (D) if the attorney's fee is divided with another lawyer who is not a partner in or an associate of the lawyer's firm or law office, the amount of fee received by each and the manner in which the division is determined.

with invoices and receipts; provided a final accounting; or held a closeout meeting with the client. The Special Master stated that Crowther prematurely paid himself the wrong amount because he treated the client's $25,000 payment as extra attorney fees and secretly took the remaining money as costs and fees. The Special Master concluded that Crowther violated Rule 1.5 (c) (2) (ii) by failing to provide the written statement required in contingency fee cases to inform the client about her recovery and how the amount was determined, which required him to detail the litigation costs, expenses, and fees.

(iv) Rule 1.15 (I)[7]

---

[7] Rule 1.15 (I) provides in relevant part:

(a) A lawyer shall hold funds . . . of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own funds . . . . Funds shall be kept in one or more separate accounts maintained in an approved institution . . . . Complete records of such account funds . . . shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

(b) For the purposes of this rule, a lawyer may not disregard a third person's interest in funds . . . in the lawyer's possession if: (1) the interest is known to the lawyer, and (2) the interest is based upon one of the following: (i) a statutory lien . . . . The lawyer may

19

The Special Master observed that it was not ascertainable from any bank records when the settlement funds were disbursed because Crowther did not manage, account for, or identify funds with specificity. In fact, he admitted that for years, he systematically failed to maintain individual client account ledgers or separate client funds and that he misused his law firm's local operating and trust accounts by making payments from one account that should have been made from the other and not timely moving his own funds out of the trust account. The Special Master concluded that

disregard the third person's claimed interest if the lawyer reasonably concludes that there is a valid defense to such lien[.]

(c) Upon receiving funds . . . in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds . . . that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(d) When in the course of representation a lawyer is in possession of funds . . . in which both the lawyer and a client or a third person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the funds or property as to which the interests are not in dispute.

20

Crowther violated Rule 1.15 (I) (a) by failing to separate the client's settlement funds, to maintain a separate ledger for *any* client's funds, or to keep his own funds separate from funds belonging to the client and the medical lienholder; Rule 1.15 (I) (b) by disregarding the lienholder's interest in the settlement funds; and Rule 1.15 (I) (c) by failing to notify the client and the lienholder about the receipt of the funds, to promptly disburse the funds due to them, and to render a full accounting of the funds upon the client's written request.

The Special Master further concluded that Crowther violated Rule 1.15 (I) (d) by failing to separate the portion of funds subject to the third-party claim by the lienholder and contested by the client; to promptly distribute to the lienholder and the client the funds not in dispute; and to hold the funds separate until there was an accounting and severance of their interests or until any dispute was resolved. The Special Master observed that in his response to the 2013 grievance, Crowther did not mention whether he had distributed any money to himself or his firm, and he had not

21

completed an accounting, so he could not have known how much of the settlement funds would be owed to the lienholder or how much would be distributed to the client. Thus, the Special Master presumed that Crowther "had kept a substantial amount of the money in his trust account to cover those distributions." The Special Master then noted the "missed opportunities" to resolve the distribution issue, including Crowther's failure to file a response to the hospital's motion to enforce the settlement agreement, or to seek a judicial remedy such as interpleader.

(v) Rule 1.15 (II) (b)[8]

In the formal complaint, the Bar alleged that Crowther violated Rule 1.15 (II) (b) by failing to keep and maintain trust

---

[8] Rule 1.15 (II) (b) provides that

[n]o personal funds shall ever be deposited in a lawyer's trust account, except that unearned attorney's fees may be so held until the same are earned. Sufficient personal funds of the lawyer may be kept in the trust account to cover maintenance fees such as service charges on the account. Records on such trust accounts shall be so kept and maintained as to reflect at all times the exact balance held for each client or third person. No funds shall be withdrawn from such trust accounts for the personal use of the lawyer maintaining the account except earned lawyer's fees debited against the account of a specific client and recorded as such.

account records showing the exact balance of the funds held for the client and the lienholder, and by withdrawing funds for his personal use without first debiting the amount against his trust account records and recording it. The Special Master summarily concluded that Crowther admitted to violating Rule 1.15 (II) (b) in his answer to the formal complaint.

(vi) Rule 8.4 (a) (4)[9]

The Special Master concluded that Crowther violated Rule 8.4 (a) (4) because, at some point between February 2014 and April 2016, he took the entire amount of the settlement proceeds "surreptitiously, in a manner to avoid scrutiny or accountability." The Special Master also concluded that Crowther violated Rule 8.4 (a) (4) by knowingly making false statements about the nature of the client's $25,000 advance payment during the disciplinary proceedings because during his 2020 deposition, he claimed that the meaning of "legal expenses" was ambiguous, resulting in a

---

[9] Rule 8.4 (a) (4) provides that a lawyer violates the GRPC when he "engage[s] in professional conduct involving dishonesty, fraud, deceit or misrepresentation."

difference of interpretation between him and the client. The Special Master observed that OCGA § 13-2-2 provides rules of contract interpretation, including that "[t]he custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract," and that "[i]f the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred." OCGA § 13-2-2 (3), (5). The Special Master noted that attorneys routinely differentiate between attorney fees and expenses, so under OCGA § 13-2-2 (3) and (5), the client's understanding of the payment as being for expenses prevailed. The Special Master then stated that in his response to the 2013 grievance, Crowther had only admitted that the $25,000 was for "initial" expenses, contrary to the Retainer Agreement's characterization of it as the upper limit of the client's responsibility for expenses. Moreover, in his response to the 2013 grievance, Crowther stated that the client was given an accounting showing that the $25,000 had been exhausted during litigation.

24

However, the alleged accounting was never produced, and the client denied receiving it.

The Special Master further concluded that Crowther violated Rule 8.4 (a) (4) by stating in his 2020 supplemental answer to the notice of investigation that he had not made the disbursements because the case had not concluded. The Special Master concluded that this statement, which was made under oath, was false and misleading, and was carefully crafted to give the client hope for a disbursement, though Crowther knew all of the money had been distributed to him and his firm by 2016.

(b) SDBD No. 7134

In 2016, Crowther settled two personal injury matters on behalf of two sets of clients. A financing company had provided "settlement financing" in both matters in exchange for which the clients granted it a lien on any settlement. After Crowther settled the matters, money was deposited into his trust account. He paid other lienholders, but did not pay the financing company, even though its liens were designated on the closeout documents in each

25

case. A representative of the financing company filed a grievance in 2018, claiming that Crowther failed to pay liens of $3,298 and $1,220. Crowther paid those amounts to the financing company after the grievance was filed with personal funds that he deposited into his trust account. He acknowledged that his management of the accounts was deficient and admitted to improperly advancing $100 to one of the clients so that she could buy a medically recommended bed. The Special Master found that Crowther failed to protect the interests of the financing company at the time the settlement funds were disbursed to the clients, and he did not notify the financing company of the settlements.

The Special Master observed that the investigation of the grievance included an examination of the trust and operating accounts for Crowther's law firm, which focuses on personal injury cases involving contingency fee agreements. Three years of bank statements were produced in discovery, as well as ledgers and other accounting documents. The Special Master noted that, contrary to the trust accounting rules, Crowther initially deposited all of the

26

money he earned into his trust account, even money from flat-fee cases and rents he was owed, which mingled with funds owed to clients and third parties. Sometimes, his trust account would fall below the amount he needed to pay clients, which required him to put his own money in the account, pay liens on settlement funds via credit card or from his operating account, or transfer money from his operating account to his trust account. He also left much of the financial administration up to his bookkeeper's discretion. The Special Master opined that Crowther's careless administration and poor recordkeeping of his trust account resulted from inadequate protocols and a failure to regularly account for the status of individual client funds.

(i) Rule 1.8 (e)[10]

The Special Master concluded that Crowther violated Rule 1.8 (e) because he admitted that before the settlement funds were received in one of the personal injury cases, he advanced money to

---

[10] Rule 1.8 (e) provides that "[a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation," subject to exceptions not relevant here.

the client so that she could purchase a medically recommended bed. The Special Master further observed that Crowther occasionally used his credit cards to pay clients' medical bills and expenses before reimbursing himself from client funds transferred from his trust account to his operating account.

(ii) Rule 1.15 (I)

The Special Master concluded that Crowther violated Rule 1.15 (I) (a) based on his admission that he was responsible for the funds; that his trust account lacked proper safeguards, resulting in temporary shortfalls; that he sometimes paid client expenses, including liens, out of his operating account; and that he failed to maintain trust account records showing the exact balances for each client or to preserve such records for six years. She concluded that Crowther violated Rule 1.15 (I) (b) based on his admission that he disregarded the financing company's interest in the funds by failing to maintain in his trust account the amount of the liens, even though the closeout documents in both personal injury cases referenced the liens. The Special Master concluded that Crowther violated Rule

28

1.15 (I) (c) by failing to notify the financing company of the settlement or to promptly deliver its funds.

(iii) Rule 1.15 (II)

The Special Master concluded that Crowther admitted to violating Rule 1.15 (II) (b) by depositing personal funds into the trust account and by failing to maintain the required records.[11]

(c) Application of ABA Standards

The Special Master then turned to the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"), to analyze in both matters (1) the duties violated; (2) Crowther's mental state; (3) the actual or potential injury caused by his misconduct; and (4) applicable aggravating and mitigating factors. See *In the Matter of Morse*, 265 Ga. 353, 354 (456 SE2d 52) (1995).

(i) Duties Violated

The Special Master noted that, in connection with SDBD No. 7390, she considered only the duties Crowther violated after the

---

[11] The Special Master reiterated that she had granted summary judgment to Crowther on Rule 1.15 (II) (a), and the Bar does not contest this conclusion.

29

2013 grievance was dismissed, which included the duties of diligence; communication; transparency and reasonableness in matters regarding fees and expenses; candor; and integrity in professional practice. As to SDBD No. 7134, the Special Master found that Crowther violated his duty to avoid conflicts of interest. As to both matters, the Special Master found that he violated his duty of safekeeping property and trust accounts.

(ii) Mental State

With respect to Rule 1.15 (I) (a), the Special Master found that the Bar did not produce evidence that Crowther intentionally set up his trust account to be out of compliance with the trust accounting rules, and that there was no evidence that he had attended CLEs on trust accounts or consulted with other attorneys or the Bar's Law Practice Management Program (the "Program"). However, she found that Crowther declined an offer from the Program to review the firm's trust account. Moreover, by delegating to his bookkeeper authority over his accounts without guidance or direction, Crowther knowingly ignored trust account rules. The Special Master found

that Crowther intended that money be deposited into and released from his trust account pursuant to the scheme created by the bookkeeper; that client funds would not be separated or accounted for with accurate ledgers; and that records would not be kept on the funds. The Special Master found that Crowther intentionally put earned fees or other personal funds into the trust account and knowingly paid client expenses using credit cards or the firm's operating account. Additionally, the Special Master stated that Crowther intentionally failed to resolve the medical lien in SDBD No. 7390 or to hold the settlement funds until the lien was paid, and he paid the financing company's lien in SDBD No. 7134 only after the grievance was filed. In SDBD No. 7390, the Special Master found that Crowther acted intentionally, exhibiting a pattern of behavior driven by "unrestrained greed and profiteering," when he signed the settlement check without the client's permission, disbursed the settlement funds to himself in violation of the 2012 court order, and continued to misrepresent to the Bar and the client that the

settlement funds were available until he admitted at his 2020 deposition that they had all been disbursed.

(iii) Actual or Potential Injury

The Special Master found that the grievants in both matters suffered serious injury. In SDBD No. 7134, the financing company suffered actual injury when Crowther failed to notify it and pay the liens from the settlement funds, but that injury was remediated when Crowther paid the liens after the grievance was filed. In SDBD No. 7390, the client and her siblings suffered actual injury due to the unresolved medical lien and because Crowther paid himself the settlement funds that belonged to them. The Special Master noted that the 2022 draft closeout reflected that he owed the client $34,148.92, and Crowther testified that he was prepared to pay that amount.

(iv) Aggravation and Mitigation

The Special Master then summarized testimony from the aggravation/mitigation hearing, with particular focus on SDBD No. 7390 and the client's testimony, and testimony from Crowther's

32

numerous character witnesses. The Special Master also summarized in detail Crowther's own testimony, in which he referred to the client and her sister in SDBD No. 7390 as "elderly ladies" and "like family," and stated that he did not intend for the case to go unresolved for so long and that he wished they could reach an agreement about how much money the plaintiffs were owed. Nonetheless, he maintained that under the Retainer Agreement, he was entitled to all of the fees and expenses he had disbursed to his firm.

Crowther also testified that he often adjusts a client's expenses where "real money" was not involved (such as legal research, phone lines, and making copies), and in automobile accident cases, he waives fees until his attorney fee is less than the amount the client will receive. Crowther has a new bookkeeper to handle his bank accounts, tracks costs and expenses appropriately, and has hired an accountant to conduct quarterly audits. Crowther's experience in law firms before starting his own practice did not include education about trust accounts, though he acknowledged that he was responsible for knowing the trust account rules. Crowther testified

about being active in his church, supporting programs that help low-income students improve their college admissions scores and increase their chances of getting into good colleges, and allowing law students to shadow him.

In aggravation, the Special Master found that Crowther acted with a dishonest or selfish motive in connection with SDBD No. 7390, engaged in a pattern of misconduct, and committed multiple offenses. See ABA Standard 9.22 (a), (c)-(d). The Special Master found that Crowther submitted false evidence or statements or engaged in deceptive practices during the disciplinary process, see ABA Standard 9.22 (f), because in connection with SDBD No. 7390, he made false statements during the investigatory phase of the 2013 grievance; failed to correct those statements until his 2020 deposition; gave false deposition testimony about the nature of the client's $25,000 payment; and gave false testimony at the aggravation/mitigation hearing about receiving verbal permission from the client to endorse the settlement check. The Special Master found that Crowther refused to acknowledge the wrongful nature of

his conduct, see ABA Standard 9.22 (g), because for a long time, he maintained a belief that his bookkeeper bore some responsibility for his accounting practices not being compliant with the GRPC; that in connection with SDBD No. 7390, he did not acknowledge any wrongdoing except for his systemic trust accounting issues, and his 2022 draft closeout still charged the client for fees and expenses that were not permitted by the Retainer Agreement; and that when asked by Bar counsel whether he believed he had been diligent in resolving the client's case, he gave several non-responsive answers, which "typifies the strained efforts [he] made to avoid responsibility and accountability."

The Special Master found that Crowther, a member of the State Bar of Georgia since 2000, had substantial experience in the practice of law; that he was indifferent to making restitution because he did not make restitution in SDBD No. 7134 until after the grievance was filed, and has never made restitution in SDBD No. 7390; and that the plaintiffs in SDBD No. 7390 were vulnerable victims due to their advanced ages, among other reasons. See ABA

Standard 9.22 (h)-(j). Finally, the Special Master found that Crowther had committed illegal conduct in SDBD No. 7390, see ABA Standard 9.22 (k), noting that in 2014, the client contacted law enforcement to have him investigated for fraud, but that investigation was closed without charges being filed. Nonetheless, the Special Master found that Crowther's actions, including misrepresenting his authority to endorse the settlement check, siphoning money from the settlement funds, and misrepresenting from 2014 until 2020 that the money was still available for distribution, constituted theft under OCGA § 16-8-2 and forgery under OCGA § 16-9-1 (d).

In mitigation, the Special Master found that Crowther had no prior disciplinary record; he had a good reputation as an attorney; he presented testimony of his good character; and he served low-income students through mentoring and scholarships. See ABA Standard 9.32 (a), (g).

(d) Recommendation of Discipline

Crowther sought a six-month suspension, while the Bar sought disbarment. The Special Master extensively reviewed cases cited by Crowther and the Bar. See, e.g., *In the Matter of Cook*, 311 Ga. 206 (857 SE2d 212) (2021) (rejecting recommendations of the special master and review board and imposing public reprimand for attorney's violations of Rules 1.15 (I) and 1.15 (II) when clients were not harmed; substantial mitigating factors were present; and the only aggravating factors were substantial experience and pattern of misconduct); *In the Matter of Berry*, 310 Ga. 158, 158-159 (848 SE2d 71) (2020) (disbarring attorney in default on a notice of discipline for violations of Rules 1.2 (a), 1.3, 1.4, 1.5 (b) and (c) (2), 1.15 (I), and 8.4 (a) (4) when numerous aggravating factors were present); *In the Matter of Gorman*, 294 Ga. 726, 726-727 (755 SE2d 746) (2014) (accepting special master's recommendation and disbarring attorney for violations of Rules 1.3, 1.4, 1.15 (I), 1.15 (II), and 8.4 (a) (4) when no mitigating factors and three aggravating factors were present). The Special Master also examined *Favors*, 283 Ga. at 588-589, in which an attorney filed a petition for voluntary discipline and

received a three-year suspension for her violations of Rules 1.15 (I), 8.1 (a), and 8.4 (a) (4), for spending part of the settlement funds for herself instead of paying a third party who was entitled to the money, lying about where the funds had gone, and lying to the investigative panel during the disciplinary proceeding.

After observing that the aggravating factors significantly outweighed the mitigating factors, the Special Master recommended that Crowther be disbarred and that he make restitution to the client in SDBD No. 7390 in the amount of $140,625, plus interest at the statutory rate, calculated starting in August 2012. The Special Master noted that the amount of restitution represented the total settlement amount of $187,500, less Crowther's 25 percent attorney fee ($46,875), and crediting the client with the $25,000 she had already paid as expenses pursuant to the Retainer Agreement. Crowther filed exceptions to the Special Master's report and recommendation and sought review by the Review Board.

3. Review Board's Report and Recommendation

The Review Board found that the Special Master's factual findings were not clearly erroneous or manifestly in error and that her conclusions of law were correct. See Bar Rule 4-216 (a). The Board thus adopted and incorporated by reference the Special Master's findings and conclusions. Turning to the ABA Standards, the Board also agreed with the Special Master's analysis of the duties violated, the lawyer's mental state, and the potential or actual injury.

The Board disagreed, however, with the Special Master's balancing of aggravation and mitigation. The Board opined that the Special Master erred by finding that Crowther's experience in the practice of law was aggravating instead of mitigating because Crowther's "inexperience, specifically the lack of mentors, contributed to his conduct." The Board further opined that the length of time one has practiced law does not negate the fact that issues may arise if a lawyer does not have proper training or mentors, and it believed that Crowther did not receive proper training in law firm management, which explained but did not

excuse his conduct. The Board then stated that the Special Master "did not give enough weight" to the mitigating factors, noting that Crowther had shown significant evidence of his good reputation and character and his lack of prior discipline and opining that the Special Master did not fully appreciate his service to underprivileged students. Moreover, the Board stated that it was apparent during Crowther's oral argument before the Board that his remorse was genuine. Therefore, the Board recommended that Crowther be suspended for four years, with reinstatement conditioned upon paying restitution to the client in SDBD No. 7390 in the amount of $140,625, plus statutory interest from August 2012. The Board stated that it relied on *Favors*, 283 Ga. at 588, a case in which the defendant who sought voluntary discipline received a three-year suspension, as a similar case that resulted in discipline short of disbarment. The Review Board did not cite any authority from Georgia or otherwise that supports imposition of a four-year suspension instead of disbarment.

Both the Bar and Crowther filed exceptions in this Court as to the Board's report and recommendation.

4. State Bar's Exceptions and Crowther's Response

The Bar contends that the Board erred by concluding that Crowther's legal experience was not an aggravating factor, even though he had been practicing for 14 years at the start of the limitation period for the 2019 grievance. The Bar observes that the Special Master found Crowther admitted it was his responsibility to know the trust accounting rules, and that he had substantial experience as a plaintiff's lawyer in contingency fee cases. As to Crowther's false deposition testimony during the disciplinary proceeding, the Bar asserts that "[n]o Georgia lawyer should require a mentor or training or a CLE to know not to lie or misrepresent facts during a deposition." The Bar further contends that the Board erred by reweighing the aggravating and mitigating factors because there is no evidence of Crowther's remorse in the disciplinary records, and the Special Master *did* credit the voluminous evidence of Crowther's good character, reputation, and service to

41

underprivileged students. The Bar argues that although the Special Master purported to find four mitigating factors, those factors fall under only two categories in the ABA Standards — lack of prior discipline and good character or reputation, see ABA Standard 9.32 (a) and (g) — and that two (or four) mitigating factors do not outweigh nine aggravating factors.

Finally, the Bar asserts that the Board erred by recommending a four-year suspension instead of disbarment because (1) "[g]enerally, suspension should be for a period of time equal to or greater than six months, but in no event should the time period prior to application for reinstatement be more than three years"; (2) this Court previously rejected a five-year suspension in a different disciplinary case because it was unsupported by precedent, the evidence supported a more severe sanction, and the grievances revealed "a disturbingly extensive pattern of similar misconduct extending over a period of several years," *In the Matter of Briley-Holmes*, 304 Ga. 199, 208 (815 SE2d 59) (2018); and (3) *Favors* is distinguishable because it was initiated as a petition for voluntary

discipline and the attorney presented evidence of numerous mitigating factors not present in either of Crowther's matters. The Bar maintains that disbarment is the appropriate sanction. See *In the Matter of Hunt*, 304 Ga. 635, 636-637, 641-644 (820 SE2d 716) (2018) (accepting special master's recommendation and disbarring attorney who stole client funds from his trust account and converted them to his own use and the aggravating factors outweighed the mitigating factors).

In response, Crowther argues that the Board correctly reweighed the aggravating and mitigating factors because when he was hired by the client in SDBD No. 7390 in 2007, he had little experience with the trust accounting rules; that *Hunt* is distinguishable because that attorney intentionally stole client funds but here, Crowther believed he was entitled to a portion of the settlement funds for his attorney fees and expenses; and that his violations of the trust accounting rules were merely negligent instead of intentional, but he has remedied those deficiencies and he

43

promptly paid the financing company's liens in SDBD No. 7134 once he became aware of them.

5. Crowther's Exceptions and State Bar's Response

In Crowther's exceptions, he first argues that the Board erroneously approved the Special Master's summary judgment rulings, which improperly resolved disputed issues of fact in SDBD No. 7390 as to his belief about whether he could disburse the settlement funds to himself, whether his statements in response to the 2013 grievance were untrue, and whether his conduct violated Rule 8.4 (a) (4). Second, Crowther contends that the Board erroneously approved the Special Master's consideration of matters that occurred before the 2013 grievance was dismissed because the Bar stipulated that he was not subject to discipline for that conduct, since it fell outside the four-year statute of limitation in Bar Rule 4-222 (a). Crowther further contends that the Bar was not entitled to rely on the two-year tolling provision in Bar Rule 4-222 (a) because the Bar failed to show that Crowther or his actions were unknown during that period. Third, Crowther contends that there was no

44

clear and convincing evidence in SDBD No. 7390 that he violated Rule 1.5 because the Bar presented no evidence that the rates he used to calculate expenses for meals, copies, and travel were unreasonable; that there was no clear and convincing evidence that he violated Rule 8.4 (a) (4) because the Special Master did not find that he *intended* to be deceitful, fraudulent, dishonest, or to make misrepresentations; and the Special Master erred in SDBD No. 7134 by finding that he was indifferent to making restitution to the financing company and that his violations of the GRPC were intentional and knowing, rather than negligent.

Finally, Crowther observes that he came from a low-income background, but ultimately went to college, served in the Army, and attended law school, and he now mentors and teaches law students from his community, who are historically underrepresented in the legal profession. He argues that a four-year suspension is excessive and not supported by case law, and he requests a two-year suspension with restitution to be paid to the client in SDBD No.

7390, though he contends the amount should be adjusted to reflect the expenses documented in the 2013 draft closeout.

The Bar responds that the Special Master properly granted summary judgment; that her conclusions as to each of the Rules Crowther violated were correct; and that her findings as to Crowther's restitution to the financing company and as to his mental state were supported by the evidence. The Bar argues that although it did not allege that Crowther violated the GRPC before February 2014, that did not limit inquiry by the Special Master and Board into the history of the case and the facts giving rise to his ongoing violations of the GRPC. The Bar argues that it was entitled to tolling because Crowther's offenses were unknown at the time it dismissed the 2013 grievance because the violations had not yet occurred and the client had not yet notified the Bar. See *In the Matter of Allison*, 267 Ga. 638, 641-642 (481 SE2d 211) (1997) (in a case where the investigative panel initiated a grievance in 1992 for acts occurring between 1986 and 1988, holding that when a victim does not come forward within the statute of limitation, the Bar may take

advantage of the two-year tolling provision). The Bar also asserts that Crowther is estopped from arguing that the Special Master erred by considering evidence from before February 2014 because Crowther himself presented that evidence to support his defense. The Bar notes that the Special Master explicitly limited her consideration of Crowther's violations of the GRPC to conduct that occurred after February 2014, and she correctly considered all relevant evidence in her analysis of the ABA Standards.

6. Analysis and Conclusion

In reviewing the Special Master's findings of fact and conclusions of law, the Review Board reweighed facts found by the Special Master, even though the Review Board did not conclude that the Special Master's factual findings were clearly erroneous. With respect to this reweighing, we note the following.[12] We disagree with

---

[12] We note that the Bar Rules do not expressly prohibit the Review Board from reweighing the Special Master's findings as to aggravation and mitigation. But to the extent that the Review Board made additional findings with respect to disputed issues (e.g., findings about Crowther's community service or his level of remorse), we caution the Review Board that these are the sort of fact and credibility findings that generally should be left to the Special Master in the first instance. See Bar Rule 4-216 (a).

the Review Board that Crowther's legal experience was mitigating. In 2014, the earliest time of the misconduct for which the Bar seeks discipline, Crowther had been practicing law for 14 years in total, and he had been a solo practitioner at least since 2007, when the elderly client hired him. Under the circumstances presented by this case, Crowther's alleged lack of mentors and experience with handling trust accounting matters is immaterial to the question of whether he had substantial experience in the practice of law.[13] Moreover, we agree with the Bar that the Board placed more emphasis on Crowther's service to his community than was appropriate. Additionally, we note that even if the Board was correct that the Special Master erred by failing to find that Crowther exhibited remorse, the balance of aggravating and mitigating factors would still weigh heavily in favor of aggravation. Finally, we agree with the Bar that *Favors* is distinguishable. Although *Favors*

---

[13] The Review Board's reliance on Crowther's alleged lack of mentoring rings particularly hollow in light of Crowther's own assertion that he should be given the benefit of mitigation for serving as a mentor to underprivileged students.

involved similar violations of the GRPC, it came before the Court on a petition for voluntary discipline and numerous mitigating factors were present — including the fact that the attorney had made restitution, which Crowther has failed to do in SDBD No. 7390 — and resulted in a three-year, rather than a four-year, suspension. Further, the Board cited no authority from Georgia or otherwise to support a four-year suspension, and "a three-year suspension . . . is generally the maximum amount of time this Court will consider for a suspension." *In the Matter of Van Dyke*, 316 Ga. 168, 177 (886 SE2d 811) (2023).

We reject all of Crowther's exceptions. As a threshold matter, we note that while the Special Master summarized matters that occurred outside of the statute of limitation in SDBD No. 7390, she did so only to establish the background of the case, to examine the aggravating and mitigating evidence, and to determine the appropriate amount of restitution. Her conclusions as to Crowther's violations of the GRPC only deal with his misconduct during the applicable limitation period, 2014 to 2019. Moreover, the Bar was

entitled to take advantage of the two-year tolling provision in Bar Rule 4-222 (a) because when it dismissed the 2013 grievance in 2014, Crowther's future violations of the GRPC (i.e., disbursing all of the settlement funds at some point between 2014 and 2016; attempting to charge the client for two copies of her voluminous file even though she had requested the original; and lacking diligence in returning the client's file, providing an accounting, or resolving the dispute over the funds) were unknown and in fact, had not yet occurred.

Second, Crowther's argument that the Special Master erred by granting summary judgment as to alleged disputes of material fact in SDBD No. 7390 lacks merit. The Special Master properly reviewed the record and concluded that, as a matter of law, Crowther's conduct from 2014 to 2019 violated the provisions of the GRPC with which he was charged because (1) the superior court's 2012 order prohibited Crowther from making any distributions until the plaintiffs had executed releases of liability, but Crowther distributed the settlement funds to himself between 2014 and 2016

even though the plaintiffs had never executed the releases, and (2) Crowther's response to the 2013 grievance stated that the client knew the funds had not been distributed because she had not yet executed a release of liability, indicating that the funds were still available to be distributed at that point.

As to Crowther's argument that there was no clear and convincing evidence that he violated Rule 8.4 (a) (4), we have defined "conduct involving dishonesty, fraud, deceit, or misrepresentation" under Rule 8.4 (a) (4) to mean "conduct that is intended or likely to mislead another." *In the Matter of Woodham*, 296 Ga. 618, 625 (769 SE2d 353) (2015). The Bar charged Crowther with violating Rule 8.4 (a) (4) by making false statements to "[his client] and others about the status of settlement funds" and by converting those funds for his own use. While the Special Master granted summary judgment on Rule 8.4 (a) (4) based on Crowther's misleading statements to the client that funds were still available to be distributed, the Special Master also granted summary judgment on Rule 8.4 (a) (4) based on conduct that was not charged. To the extent the Special Master

found Crowther in violation of conduct under Rule 8.4 (a) (4) that was not charged, we do not address that conduct and consider it only in aggravation. Cf. *Inquiry Concerning Coomer*, 316 Ga. 855, 873 (892 SE2d 3) (2023).[14]

Crowther's argument that the Special Master erroneously granted summary judgment on Rule 1.5 similarly lacks merit, as the Special Master correctly concluded that it was undisputed that the draft closeouts submitted by Crowther reflected expenses of over $130,000 and included exorbitant charges for soft costs such as copying and telephone lines that were impermissible under the Rule. Pretermitting whether his payments to the financing company after the grievance was filed in SDBD No. 7134 preclude a finding of indifference to making restitution in that matter, the Special

---

[14] As we explained in a recent judicial discipline matter, "imposing discipline on a judge solely based on the judge's response to a JQC inquiry, without the JQC first filing formal charges against the judge alleging such conduct constituted a violation of the Code of Judicial Conduct, might raise due process concerns." *Inquiry Concerning Coomer*, 316 Ga. at 874 n. 19. Similarly, in this Bar discipline case, we consider uncharged offenses that arose during the disciplinary process only as an aggravating factor in determining the proper sanction.

Master also found that this aggravating factor applied in SDBD No. 7390, because Crowther had *never* made restitution to the client in that matter.

Finally, Crowther's argument that a two-year suspension is warranted in light of his good character and service to his community is unpersuasive. While we commend his community service, a two-year suspension is not supported by precedent or by the records in these two disciplinary matters. We have previously disbarred attorneys for violating the trust accounting rules and other provisions of the GRPC when numerous aggravating factors are present, even if the attorney provides evidence of his good character and reputation. See, e.g., *Berry*, 310 Ga. at 158-159 (disbarring attorney in default on a notice of discipline for violations of Rules 1.2 (a), 1.3, 1.4, 1.5 (b) and (c) (2), 1.15 (I), and 8.4 (a) (4) when numerous aggravating factors were present); *Hunt*, 304 Ga. at 636-637, 641-644 (disbarring attorney for violations of Rules 1.15 (I), 1.15 (II), and 8.4 (a) (4) when numerous aggravating factors were present); *In the Matter of Harris*, 301 Ga. 378, 379 (801 SE2d 39)

(2017) (accepting special master's recommendation and disbarring attorney for violating Rules 1.15 (I) and 1.15 (II); attorney in default on formal complaint); *Gorman*, 294 Ga. at 726-727 (accepting special master's recommendation and disbarring attorney for violations of Rules 1.3, 1.4, 1.15 (I), 1.15 (II), and 8.4 (a) (4) when no mitigating factors and three aggravating factors were present).

Having carefully reviewed the records, we agree with the Special Master that disbarment is the appropriate sanction for Crowther's misconduct in these two disciplinary matters, in which he violated Rules 1.3, 1.4, 1.5, 1.8 (e), 1.15 (I), 1.15 (II), and 8.4 (a) (4), with reinstatement conditioned upon the payment of restitution to the client in SDBD No. 7390 in the amount of $140,625, plus interest at the statutory rate from August 2012. See *In the Matter of Davis*, 316 Ga. 30 (885 SE2d 771) (2023) (disbarring attorney for violations of Rules 1.7, 1.15 (I), 1.15 (II), 3.4, 3.5 (d), 8.1 (b), and 8.4 (a) (5), with reinstatement conditioned upon the full payment of a probate judgment that arose from the attorney's professional misconduct); *In the Matter of Anderson*, 286 Ga. 137 (685 SE2d 711)

(2009) (disbarring attorney for violations of Rules 1.15 (I) and 1.15 (II), with reinstatement conditioned upon repayment of a judgment, making restitution, and completing the State Bar's Law Practice Management Program); *In the Matter of Oellerich*, 278 Ga. 22 (596 SE2d 156) (2004) (disbarring attorney for using his client's estate as a source of funds for his close corporation, with reinstatement conditioned upon his making full restitution to the estate). Accordingly, it is hereby ordered that the name of Derric Crowther be removed from the rolls of persons authorized to practice law in the State of Georgia. Crowther is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Disbarred. All the Justices concur.*

Decided January 17, 2024 — Reconsideration denied February 20, 2024.

Disbarment.

*Paula J. Frederick, General Counsel State Bar, William D. NeSmith III, Deputy General Counsel State Bar, Jenny K. Mittelman, James S. Lewis, Assistant General Counsel State Bar*, for State Bar of Georgia.

*Ivan A. Gustafson; Bovis Kyle Burch & Medlin, Kim M. Jackson, D. Garrett Anderson*, for Crowther.